[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-12509

_____

D.C. Docket No. 4:14-cv-00320-HLM

JESSICA PARM,

Plaintiff-Appellee,

versus

NATIONAL BANK OF CALIFORNIA, N.A.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(August 29, 2016)

Before ED CARNES, Chief Judge, DUBINA, Circuit Judge, and HUCK,[*] District Judge.

DUBINA, Circuit Judge:

This appeal arises out of a lawsuit filed by Appellee Jessica Parm ("Parm") against Appellant Northern Bank of California ("NBCal") regarding a payday loan Parm acquired in 2013. The district court denied NBCal's motion to compel arbitration under Parm's loan agreement, finding the arbitration clause unenforceable because it was unconscionable and required the parties to arbitrate in an unavailable forum. NBCal argues that the agreement does provide an arbitral forum, and the district court erred when it failed to submit the question of arbitrability to an arbitrator under the agreement's delegation clause. After reviewing the record, reading the parties' briefs, and having the benefit of oral argument, we affirm.

## I.  BACKGROUND

*A.  Facts*

In 2013, Parm entered into a loan agreement with Western Sky Financial, LLC ("Western Sky") over the internet from her computer in Georgia. Western Sky is a South Dakota limited liability company owned by a member of the Cheyenne River Sioux Tribe ("CRST"). The agreement provided that Parm would

---

[*] Honorable Paul C. Huck, United States District Judge for the Southern District of Florida, sitting by designation.

receive a $1,000 loan subject to certain fees and an annual interest rate of 233.71%, totaling $4,831.06 in payments.  The loan also provided that Western Sky could initiate automated or other electronic fund transfers from the bank account she included on her loan application.  NBCal is the financial institution that authorized these electronic transfers.

Resolution of this appeal requires interpretation of the loan agreement's arbitration provision.  The provision states in relevant part:

> WAIVER OF JURY TRIAL AND ARBITRATION.  PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. Unless you exercise your right to opt-out of arbitration in the manner described below, any dispute you have with Western Sky or anyone else under this loan agreement will be resolved by binding arbitration. Arbitration replaces the right to go to court, including the right to have a jury, to engage in discovery (except as may be provided in the arbitration rules), and to participate in a class action or similar proceeding. In Arbitration, a dispute is resolved by an arbitrator instead of a judge or jury. Arbitration procedures are simpler and more limited than court procedures. Any Arbitration will be limited to the dispute between yourself and the holder of the Note and will not be part of a class-wide or consolidated arbitration proceeding.
>
> *Agreement to Arbitrate*. You agree that any Dispute, except as provided below, will be resolved by Arbitration, which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules and the terms of this Agreement.
>
> *Arbitration Defined*. Arbitration is a means of having an independent third party resolve a Dispute. A "Dispute" is any controversy or claim between you and Western Sky or the holder or servicer of the Note. The term Dispute is to be given its broadest possible meaning and includes, without limitation, all claims or demands (whether past, present, or future, including events that occurred prior to the opening

3

of this Account), based on any legal or equitable theory (tort, contract, or otherwise), and regardless of the type of relief sought (i.e. money, injunctive relief, or declaratory relief). A Dispute includes, by way of example and without limitation, any claim based upon marketing or solicitations to obtain the loan and the handling or servicing of my account whether such Dispute is based on a tribal, federal or state constitution, statute, ordinance, regulation, or common law, and including any issue concerning the validity, enforceability, or scope of this loan or the Arbitration agreement.

The following section, entitled "Choice of Arbitrator," notified Parm that she

shall have the right to select any of the following arbitration organizations to administer the arbitration: the American Arbitration Association . . . ; JAMS . . . ; or an arbitration organization agreed upon by you and the other parties to the Dispute. The arbitration will be governed by the chosen arbitration organization's rules and procedures applicable to consumer disputes, to the extent that those rules and procedures do not contradict either the law of the Cheyenne River Sioux Tribe or the express terms of this Agreement to Arbitrate. . . .

### B. Procedural History

Parm filed a putative class action lawsuit against NBCal in December 2014. Her complaint alleged that NBCal, acting as an originating depository financial institution, illegally permitted Western Sky to initiate electronic fund transfers from borrower checking accounts under unlawful payday loan agreements. The complaint also challenged the enforceability of the arbitration provision in the agreement by claiming that "the purported tribal arbitral forum and governing rules do not exist now and did not exist at the time the agreements were electronically signed." NBCal filed motions to compel arbitration under Parm's loan agreement

4

and to dismiss the complaint.  Relying on our opinion in *Inetianbor v. CashCall, Inc.*, 768 F.3d 1346 (11th Cir. 2014), *cert. denied*, 135 S. Ct. 1735 (2015) and its discussion in *Parnell v. CashCall, Inc.*, 2016 WL 3356937 (N.D. Ga. Mar. 14, 2016), the district court found the arbitration agreement unenforceable for lack of available forum and unconscionability and denied NBCal's motion to compel arbitration.  NBCal subsequently perfected this appeal.

## II. STANDARD OF REVIEW

"We review de novo the district court's denial of a motion to compel arbitration."  *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 873 (11th Cir. 2005).

## III.  DISCUSSION

The arbitration agreement in this case is governed by the Federal Arbitration Act ("FAA") because the loan agreement was executed via interstate commerce.  *See* 9 U.S.C. § 2; *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015).   "The FAA places arbitration agreements on equal footing with all other contracts and sets forth a clear presumption—'a national policy'—in favor of arbitration."  *Parnell*, 804 F.3d at 1146 (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S. Ct. 1204, 1207 (2006)).  Section 4 of the FAA permits a party, such as NBCal, to seek assistance from a district court where the other party refuses to proceed under a written agreement to arbitrate.  *See* 9

5

U.S.C. § 4.  That court must treat the agreement to arbitrate as "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  *Id.* at § 2; *see Parnell*, 804 F.3d at 1146 ("Arbitration provisions will be upheld as valid unless defeated by fraud, duress, unconscionability, or another 'generally applicable contract defense.'" (quoting *Rent-A-Center v. Jackson*, 561 U.S. 63, 67–68, 130 S. Ct. 2772, 2776 (2010))).

The loan agreement in this case contains a delegation clause, requiring the parties to submit threshold issues of "validity, enforceability, or scope of the loan or the Arbitration agreement" to arbitration.  Delegation clauses are severable from the underlying agreement to arbitrate.  *See Rent-A-Center*, 561 U.S. at 70–73, 130 S. Ct. at 2778–79.  Because the loan agreement contains a delegation clause, our review is limited, at least initially, to Parm's direct challenges to that clause.[1]  *See Rent-A-Center*, 561 U.S. at 72–73, 130 S. Ct. at 2779; *Parnell*, 804 F.3d at 1148–49.  Only if we determine that the delegation clause is itself invalid or

---

[1] NBCal argues that Parm's challenge to the delegation provision is waived under *Parnell* by her failure to include the challenge in her complaint.  *Parnell*, however, is distinguishable.  Addressing the identical loan agreement in *Parnell*, we held that "a plaintiff seek[ing] to challenge an arbitration agreement containing a delegation provision . . . must challenge the delegation provision directly."  *Parnell*, 804 F.3d at 1144.  Unlike Parm, the plaintiff in *Parnell* never raised a direct challenge to the delegation clause, instead challenging the arbitration provision generally as unenforceable. *Id.* at 1149.  Had the *Parnell* plaintiff raised a direct challenge to the delegation clause in his opposition to a motion to compel, we would have considered it. *See Rent-A-Center*, 561 U.S. at 72, 130 S. Ct. at 1279 (analyzing whether the plaintiff's opposition to a motion to compel arbitration contained a direct challenge to the agreement's delegation clause).  Because Parm directly challenged the delegation clause in her opposition to the motion to compel, there is no waiver and we have jurisdiction to consider Parm's challenge.

unenforceable may we review the enforceability of the arbitration agreement as a whole.

### A.

We first assess Parm's contention and the district court's finding that the delegation clause is unenforceable because the arbitration agreement provides no available forum for an arbitrator to decide threshold issues of arbitrability. Both rely on our opinion in *Inetianbor*, which found a similar Western Sky arbitration agreement unenforceable due to the unavailability of the CRST as the exclusive and integral arbitral forum. *Inetianbor*, 768 F.3d at 1352–54. And it is true that if we find Parm's arbitration agreement materially indistinguishable, we are bound by prior panel precedent to follow *Inetianbor*'s conclusion that the agreement is unenforceable for lack of available forum and affirm the district court. *See Anders v. Hometown Mortgage Servs., Inc.*, 346 F.3d 1024, 1031 (11th Cir. 2003). NBCal contends that *Inetianbor* does not bind this court as the distinct "Choice of Arbitrator" clause gives Parm the option to select the American Arbitration Association ("AAA") or JAMS—both well-respected arbitration organizations—as neutral arbitral fora.[2] To assess these arguments, we turn to the text of Parm's arbitration agreement.

---

[2] We note that this reading has been adopted by several district courts. *See, e.g.*, *Yaroma v. Cashcall, Inc.*, 130 F. Supp. 3d 1055, 1063–64 (E.D. Ky. 2015); *Kemph v. Reddam*, 2015 WL 1510797, at 5–6 (N.D. Ill. Mar. 27, 2015); *Williams v. CashCall, Inc.*, 92 F. Supp. 3d 847, 851–

7

First, because the parties have not provided us with a clear statement of CRST contract interpretation, we apply Georgia's plain-meaning rule to interpret the loan agreement. *See Parnell*, 804 F.3d at 1147 (citing *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1061 (11th Cir. 1998)). Applying Georgia law, the construction of an agreement that will be favored is the one "which gives meaning and effect to all of the terms of the contract over that which nullifies and renders meaningless a part of the language therein contained." *Paul v. Paul*, 219 S.E. 2d 736, 739 (Ga. 1975) (internal quotation marks omitted). Furthermore, although "there is [a] presumption in favor of arbitration, '[t]he courts are not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties.'" *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1214 (11th Cir. 2011) (second alteration in original) (quoting *Goldberg v. Bear, Stearns & Co.*, 912 F.2d 1418, 1419–20 (11th Cir. 1990)).

NBCal argues that we should interpret the Choice of Arbitrator clause to conclude that AAA or JAMS could appoint any arbitrator, regardless of his or her affiliation with the tribe. Because the effect of NBCal's reading is to effectively eliminate the agreement's express requirement that the arbitrator be a representative of the CRST, it is disfavored under Georgia law. *See McCann v. Glynn Lumber Co.*, 34 S.E. 2d 839, 843 (Ga. 1945) ("[I]f possible, all of [a

54 (E.D. Wis. 2015).

contract's] provisions should be so interpreted as to harmonize with each other.");
*Rabun & Assocs. Constr., Inc. v. Berry*, 623 S.E. 2d 691, 694 (Ga. App. 2005)
("Neither the trial court nor this Court is at liberty to rewrite or revise a contract
under the guise of construing it." (internal quotation marks omitted)).  By contrast,
we may give effect to both clauses by construing the Choice of Arbitrator clause to
give Parm the right to have AAA or JAMS administer the arbitration so long as the
arbitrator selected by those organizations is a CRST representative.[3]   Because that
reading harmonizes the clauses in the agreement, it is to be preferred to the one
suggested by NBCal.  *See McCann*, 34 S.E. 2d at 843.

NBCal argues that our interpretation ignores language in the arbitration
agreement that, NBCal suggests, excepts AAA or JAMS arbitrations from the
requirement that arbitration be conducted by the CRST and its authorized
representatives.  That argument rests on a misreading of the forum selection clause,
which provides that:

---

[3] As the district court noted in its order denying NBCal's motion to compel arbitration, this
interpretation is consistent with the services provided by and the consumer dispute rules of the
AAA and JAMS.  For example, the consumer dispute rules of the AAA state that when acting as
an administrator, the AAA's "role is to manage the administrative aspects . . . , such as the
appointment of the arbitrator . . . [but] not decide the merits of a case or make rules on issues."
Order at 56, *Parm v. Nat'l Bank of Calif.*, No. 14-00320 (N.D. Ga. May 20, 2015), ECF. No. 46
(citing AAA Consumer Arbitration Rules, *Introduction: About the AAA*).  Further, the AAA rules
allow parties to direct the appointment of a specific arbitrator or make changes to applicable
consumer dispute rules. *See id.* at 57 (citing AAA R.1(c)).  The JAMS consumer dispute rules
similarly allow the parties to direct the appointment of an arbitrator or make changes to the
dispute rules applicable to the arbitration.  *See* JAMS: *Comprehensive Arbitration Rules &
Procedures*, R. 2(a)&(b).

> [The borrower] agree[s] that any Dispute, except as provided below, will be resolved by Arbitration which shall be conducted by the [CRST] by an authorized representative in accordance with its consumer dispute rules and the terms of this Agreement.

NBCal's interpretation treats the words "except as provided below" as though they modify the part of the forum selection clause requiring that arbitration be "conducted by the [CRST] by an authorized representative." That interpretation ignores the principle of English usage, formally called the nearest-reasonable-referent canon, which provides that, "When the syntax involves something other than a parallel series of nouns or verbs, a prepositive or postpositive modifier normally applies only to the nearest reasonable referent." Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 152 (2012).

In the forum selection clause, the nearest reasonable referent of the modifying phrase "except as provided below" is the word "Dispute," which is right next to that phrase. That means the exceptions referred to in the forum selection clause are exceptions to the types of disputes that require arbitration. They are not exceptions to the requirement that arbitrations be "conducted by the [CRST] by an authorized representative," because that requirement is not the nearest reasonable referent of the phrase "except as provided below."

NBCal posits that such an interpretation neglects to give meaning to the clause "except as provided below." But it does give that clause meaning, as a modifier of and limitation on "Dispute." That is because later parts of the

agreement expressly except from arbitration certain kinds of disputes. For example, a later provision of the agreement states that disputes are not subject to arbitration if they concern the validity, effect, and enforceability of a waiver of the borrower's rights to bring class action lawsuits and compel class-wide arbitration. And another later provision in the agreement, titled "Small Claims Exception," creates an exception for small claims. As a result, the words "except as provided below" can readily—and under the nearest reasonable referent rule, should—be understood to modify the word "Dispute."

We must, of course, construe the agreement in a way that is consistent with the parties' intent. *See Calhoun, GA NG, LLC v. Century Bank of Ga.*, 740 S.E. 2d 210, 212 (Ga. App. 2013). It cannot be contended, however, that the parties added the "Choice of Arbitrator" provision with the intent of responding to the defects in the agreement that we identified in our *Inetianbor* decision. The agreement at issue in this case was executed in April 2013, which is almost a year and a half before we issued our decision in *Inetianbor*. *See Inetianbor*, 768 F.3d 1346 (11th Cir. Oct. 2, 2014). In fact, the agreement in this case was executed more than four months before even the district court held that the agreement in the *Inetianbor* case was void. *See Inetianbor v. CashCall, Inc.*, 962 F. Supp. 2d 1303 (S.D. Fla. Aug 19, 2013). There is simply no good reason to reject the construction of the agreement suggested by accepted interpretive canons.

11

Even if there were some reason to construe the agreement differently, the most that would show is ambiguity, and when an arbitration clause or other part of a contract is ambiguous, Georgia courts construe it in favor of the party that did not draft it. *See Ga. State Fin. & Inv. Comm'n v. XL Specialty Ins. Co.*, 694 S.E. 2d 193, 196 (Ga. App. 2010). In this case, that party is Parm, which means we must construe ambiguities in the arbitration clause in her favor. No matter how we approach the matter, therefore, we reach the same conclusion: the arbitration agreement's forum selection clause mandates the use of an illusory and unavailable arbitral forum. *See, e.g.*, *Inetianbor*, 768 F.3d at 1354; *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 776 (7th Cir. 2014).

## B.

Selection of the unavailable CRST forum is not necessarily fatal to enforcement of the parties' agreement to arbitrate; section 5 of the FAA permits us to appoint a substitute in the event there is a lapse or failure of the named forum. *See* 9 U.S.C. § 5. However, under our precedent, "the failure of the chosen forum preclude[s] arbitration whenever the choice of forum is an integral part of the agreement to arbitrate, rather than an ancillary logistical concern." *Inetianbor*, 768 F.3d at 1350 (alteration in original) (internal quotation marks omitted) (quoting *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000)). Accordingly, we must determine whether the forum selection clause in the

12

arbitration agreement was integral "to one or both of the parties at the time they entered into the agreement." *Id.*

The terms of Parm's arbitration agreement closely mirror the terms of the arbitration agreement in *Inetianbor*. Importantly, the forum selection clause in Parm's agreement utilizes the identical mandatory language that any arbitration "shall be conducted" by the CRST and does not reference any additional fora in that clause. *See id.* at 1350–51. Use of the word "shall" and the specific incorporation of the CRST consumer dispute rules in the agreement indicate intent to arbitrate before a specific arbitrator, rather than intent to arbitrate generally. *See Miller v. GGNSC Atlanta, LLC*, 746 S.E.2d 680, 686 (Ga. App. 2013) (citations omitted). Also identical to *Inetianbor*, several provisions in Parm's loan agreement expressly and repeatedly reference the CRST and the exclusive application of its laws and jurisdiction. These pervasive references to the tribal forum and its rules provide evidence that the forum selection clause was not simply an ancillary concern but an integral aspect of the parties' agreement to arbitrate. *See Inetianbor*, 768 F.3d at 1350–51.

The most significant difference between Parm's agreement and the agreement in *Inetianbor* is the language of the Choice of Arbitrator clause. NBCal argues that this clause provides alternative arbitral fora and proves that the CRST forum was not integral to the parties' agreement to arbitrate. As previously

13

discussed, the terms of the arbitration agreement state that the AAA or JAMS may administer arbitration under that organization's rules "to the extent that those rules and procedures do not contradict" the law of the CRST and the express terms of the arbitration agreement. The terms of the arbitration agreement, incidentally, *require* that the arbitration be conducted by a representative of the CRST. Therefore, the Choice of Arbitrator clause only provides an administrative vehicle to appoint the CRST arbitrator and does not affect the importance of the CRST forum in the agreement. Based on the foregoing, we cannot distinguish Parm's agreement from our analysis in *Inetianbor*. We are bound by our prior panel precedent to conclude that the tribal forum is integral to the parties' agreement to arbitrate, and we may not provide a substitute under § 5 of the FAA.

Neither party disputes that the CRST forum is unavailable, and as such, we agree with the district court that we cannot enforce the delegation clause or the underlying arbitration agreement. We therefore affirm the district court's order denying NBCal's motion to compel arbitration in this case.

## IV.    CONCLUSION

We must enforce arbitration agreements, as all contracts, in accordance with their express terms. The terms of Parm's arbitration agreement contain a forum selection clause requiring arbitration in a tribal forum that is both unavailable and

14

integral to the parties' agreement to arbitrate. Therefore, we cannot substitute an

arbitrator in this case, and the parties cannot be compelled to arbitrate.

AFFIRMED.