**PRECEDENTIAL**


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2161
_____

JOHN S. MACDONALD

v.

CASHCALL, INC; WS FUNDING, LLC; DELBERT
SERVICES CORP; AND J. PAUL REDDAM,

Appellants

_____

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF NEW JERSEY
(D.C. No. 2-16-cv-02781)
District Judge: Hon. Madeline Cox Arleo
_____

Argued January 24, 2018
_____

Before: HARDIMAN, VANASKIE, and SHWARTZ,
<u>Circuit Judges</u>.

(Opinion Filed:  February 27, 2018)

Joseph L. Barloon                    [ARGUED]
Austin K. Brown
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Ave., NW
Washington, DC 20005

Andrew Muscato
Skadden, Arps, Slate, Meagher & Flom LLP
4 Times Square
New York, NY 10036

         Counsel for Appellant


Matthew W.H. Wessler                 [ARGUED]
Gupta Wessler PLLC
1900 L Street, NW, Suite 312
Washington, DC 20036

Brock J. Specht
Nichols Kaster, PLLP
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402

         Counsel for Appellee
         _____

         OPINION OF THE COURT
         _____

SHWARTZ, Circuit Judge.

John MacDonald, on behalf of himself and a putative class, sued CashCall, Inc., WS Funding, LLC, Delbert Services Corp., and J. Paul Reddam (collectively "Defendants") over a loan agreement that he contends is usurious and unconscionable. The agreement includes (1) a provision requiring that all disputes be resolved through arbitration conducted by a representative of the Cheyenne River Sioux Tribe ("CRST") and (2) a clause that delegates questions about the arbitration provision's enforceability to the arbitrator. Defendants moved to compel arbitration, which the District Court denied. Because the parties' agreement directs arbitration to an illusory forum, and the forum selection clause is not severable, the entire agreement to arbitrate, including the delegation clause, is unenforceable, and we will therefore affirm.

I

In 2012, New Jersey resident John MacDonald saw an advertisement for loans from Western Sky. He electronically executed a Western Sky Consumer Loan Agreement (the "Loan Agreement") and obtained a $5,000 loan. He was charged a $75 origination fee and a 116.73% annual interest rate over the seven-year term of the loan, resulting in a $35,994.28 finance charge.

The Loan Agreement stated that it

is subject solely to the exclusive laws and jurisdiction of the Cheyenne River Sioux Tribe,

Cheyenne River Indian Reservation. By executing this Loan Agreement, you, the borrower, hereby acknowledge and consent to be bound to the terms of this Loan Agreement, consent to the sole subject matter and personal jurisdiction of the Cheyenne River Sioux Tribal Court, and that no other state or federal law or regulation shall apply to this Loan Agreement, its enforcement or interpretation.

J.A. 80. In addition, the Agreement included the following choice of law clause:

**Governing Law.** This Agreement is governed by the Indian Commerce Clause of the Constitution of the United States of America and the laws of the Cheyenne River Sioux Tribe. We do not have a presence in South Dakota or any other states of the United States. Neither this Agreement nor Lender is subject to the laws of any state of the United States of America. By executing this Agreement, you hereby expressly agree that this Agreement is executed and performed solely within the exterior boundaries of the Cheyenne River Indian Reservation, a sovereign Native American Tribal Nation. You also expressly agree that this Agreement shall be subject to and construed in accordance only with the provisions of the laws of the Cheyenne River Sioux Tribe, and that no United States state or federal law applies to this Agreement.

J.A. 85.  The Loan Agreement also included several arbitration provisions:

> **Agreement to Arbitrate.**  You agree that any Dispute, except as provided below, will be resolved by Arbitration, which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules and the terms of this Agreement.
>
> **Arbitration Defined.**  Arbitration is a means of having an independent third party resolve a Dispute.  A "Dispute" is any controversy or claim between you and Western Sky or the holder or servicer of the Note.  The term Dispute is to be given its broadest possible meaning and includes, without limitation, all claims or demands (whether past, present, or future, including events that occurred prior to the opening of this Account) based on any legal or equitable theory (tort, contract, or otherwise), and regardless of the type of relief sought (i.e. money, injunctive relief, or declaratory relief).  A Dispute includes . . . any issue concerning the validity, enforceability, or scope of this loan or the Arbitration agreement . . . .
>
> **Choice of Arbitrator.**  Any party to a dispute . . . may send the other party written notice . . . of their intent to arbitrate and setting forth the subject of the dispute along with the relief requested, even if a lawsuit has been filed.

Regardless of who demands arbitration, you shall have the right to select any of the following arbitration organizations to administer the arbitration: the American Arbitration Association . . . JAMS [Judicial Arbitration and Mediation Services] . . . or an arbitration organization agreed upon by you and the other parties to the Dispute. The arbitration will be governed by the chosen arbitration organization's rules and procedures applicable to consumer disputes, to the extent that those rules and procedures do not contradict either the law of the Cheyenne River Sioux Tribe or the express terms of this Agreement to Arbitrate. . . .

* * *

**Applicable Law and Judicial Review.** THIS ARBITRATION PROVISION IS MADE PURSUANT TO A TRANSACTION INVOLVING THE INDIAN COMMERCE CLAUSE OF THE CONSTITUTION OF THE UNITED STATES OF AMERICA, AND SHALL BE GOVERNED BY THE LAW OF THE CHEYENNE RIVER SIOUX TRIBE. The arbitrator will apply the laws of the Cheyenne River Sioux Tribal Nation and the terms of this Agreement. The arbitrator must apply the terms of this Arbitration agreement, including without limitation the waiver of class-wide Arbitration. The arbitrator will make written findings and the arbitrator's award may

> be filed in the Cheyenne River Sioux Tribal
> Court, which has jurisdiction in this matter.
>
> * * *
>
> If any of this Arbitration Provision is held
> invalid, the remainder shall remain in effect.

J.A. 86-89 (emphasis in original).

MacDonald subsequently received notice that Western Sky Financial sold the loan to WS Funding and that CashCall and Delbert would service the loan. MacDonald submitted monthly payments to WS Funding, CashCall, or Delbert, and as of April 2016, he had paid Defendants a total of $15,493.00 on his $5,000 loan.[1]

MacDonald sued Defendants on behalf of himself and a putative class of those similarly situated,[2] alleging violations of the federal Racketeering Influenced and Corrupt Organization Act and New Jersey usury, consumer finance, and consumer fraud laws. The Complaint asserted that Western Sky and Defendants' have a long history of unlawful and deceptive lending practices and that federal circuit courts

---

[1] This amount included $38.50 in principal, $15,256.65 in interest, and $197.85 in fees.

[2] The class is defined in the Complaint to include "[a]ll individuals who, on or after May 17, 2010, made payments to one or more Defendants on loans originated by the Western Sky Enterprise where the borrower was located in the State of New Jersey at the time the loan was originated." J.A. 59 (Compl. ¶ 45).

have characterized the arbitration provisions in the loan agreements as "a sham and an illusion." J.A. 56 (Compl. ¶¶ 31, 34). MacDonald requested a declaration voiding the arbitration, choice of law, and class waiver clauses, and sought restitution.

Defendants moved to compel arbitration and, alternatively, to dismiss the Complaint. The District Court declined to compel arbitration because the Loan Agreement's express disavowal of federal and state law rendered the arbitration agreement invalid as an unenforceable prospective waiver of statutory rights.[3] Defendants appeal the District Court's denial of Defendants' motion to compel arbitration.

II[4]

"Our review of the District Court's order denying the motion to compel arbitration is plenary." Kirleis v. Dickie, McCarney & Chilcote, P.C., 560 F.3d 156, 159 (3d Cir. 2009); see also Puleo v. Chase Bank USA, N.A., 605 F.3d 172, 177 (3d Cir. 2010) (stating that our Court "exercise[s] plenary review over questions regarding the validity and enforceability of an agreement to arbitrate."). "[B]ecause our review is plenary, 'we may affirm on any grounds supported by the record.'" Hassen v. Gov't of V.I., 861 F.3d 108, 114 (3d Cir. 2017) (quoting Maher Terminals, LLC v. Port Auth. of N.Y. & N.J., 805 F.3d 98, 105 n.4 (3d Cir. 2015)).

---

[3] The District Court also dismissed some of MacDonald's claims and allowed some claims to proceed, but that ruling is not before us.

[4] The District Court had jurisdiction under 28 U.S.C. § 1332(d). Our Court has jurisdiction pursuant to 9 U.S.C. § 16.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., reflects the "national policy favoring [arbitration] and place[s] arbitration agreements on equal footing with all other contracts." Hall St. Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 581 (2008); see also 9 U.S.C. § 2 (stating that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."). Thus, generally, courts "must rigorously enforce arbitration agreements according to their terms, including terms that 'specify with whom the parties choose to arbitrate their disputes,' and 'the rules under which that arbitration will be conducted.'" Am. Exp. Co. v. Italian Colors Restaurant, 133 S. Ct. 2304, 2309 (2013) (internal citations omitted). Parties can seek judicial enforcement of an arbitration agreement under FAA § 4, and courts can appoint an arbitrator if one is not specified in the contract, pursuant to FAA § 5. The common-law rules of contract interpretation apply to arbitration agreements. Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62 (1995).

## III

Defendants assert that the District Court erred in refusing to compel arbitration because, among other things, (1) MacDonald did not specifically challenge the enforceability of the Loan Agreement's delegation clause, which directs the arbitrator to decide the enforceability of the arbitration agreement, (2) the District Court erroneously construed the arbitration provisions as an impermissible prospective waiver of federal statutory rights, (3) the AAA and JAMS arbitral forums are available to arbitrate pursuant to the arbitration

9

provisions of the Loan Agreement, and (4) the Loan Agreement contains an enforceable severability clause that should have been applied to sever any unenforceable provisions while allowing arbitration to proceed.

A

The Loan Agreement provides that an arbitrator should resolve threshold questions "concerning the validity, enforceability, or scope of this loan or the Arbitration agreement." J.A. 86-87. This is known as a "delegation clause." A court cannot reach the question of the arbitration agreement's enforceability unless a party challenged the delegation clause and the court concludes that the delegation clause is not enforceable.

A party contesting the enforceability of a delegation clause must "challenge[] the delegation provision specifically." Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 70, 72 (2010). To do so, the party must at least reference the provision in its opposition to a motion to compel arbitration. See Rent-A-Center, 561 U.S. at 72 (finding no specific challenge to a delegation clause where, among other things, the party's opposition brief "nowhere . . . even mention[ed] the delegation provision."); Parm v. Nat'l Bank of Cal., N.A., 835 F.3d 1331, 1335 n.1 (11th Cir. 2016) (concluding that a party properly raised its challenge to a delegation provision by directly challenging it in its opposition to the motion to compel arbitration).

In specifically challenging a delegation clause, a party may rely on the same arguments that it employs to contest the enforceability of other arbitration agreement provisions. See

10

Rent-A-Center, 561 U.S. at 74 (suggesting that had a party challenged a delegation provision based on the same arguments raised with respect to other provisions of the arbitration agreement, that would have been sufficient for a court to consider the delegation provision challenge).[5] However, contesting the validity of an arbitration agreement as a whole, without specifically disputing the delegation clause contained therein, is not sufficient to challenge the delegation provision. Id. at 70-75; see also Parnell v. CashCall, Inc., 804 F.3d 1142, 1146-47 (11th Cir. 2015) (reading Rent-A-Center to require a specific challenge to a delegation provision; challenging the contract as a whole is insufficient). Without a specific challenge to a delegation provision, the court must treat that provision as valid and enforce it according to FAA § 4, 9 U.S.C. § 4. Parnell, 804 F.3d at 1146-47 (citing Rent-A-Center, 561 U.S. at 72).

Here, unlike in Rent-A-Center, MacDonald specifically challenged the delegation clause. His Complaint alleges that "[b]ecause the arbitration procedure described in the agreement is fabricated and illusory, any provision requiring

---

[5] Defendants' citation to our decision in South Jersey Sanitation Co., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc., 840 F.3d 138 (3d Cir. 2016) is unavailing. According to Defendants, that case held that the content of the challenge to the delegation clause must be "exclusive" to that clause. Appellant Br. at 39 (quoting S. Jersey Sanitation Co., 840 F.3d at 143). In fact, no delegation provision was at issue in that case. Instead, we had occasion to decide only whether the plaintiff had challenged the arbitration provision with sufficient specificity, as opposed to challenging the contract as a whole.

that the enforceability of the arbitration procedure must be decided through arbitration is also illusory and unenforceable." J.A. 56 (Compl. ¶ 32). Similarly, his brief opposing Defendants' motion to compel arbitration states that "the delegation clause suffers from the same defect as the arbitration provision," and includes a section discussing this challenge. ECF No. 16 at 15. These explicit references to the delegation clause are sufficient to contest it. Therefore, the District Court did not err in assessing the delegation clause's enforceability.

B

MacDonald asserts that the Loan Agreement's delegation clause and arbitration provisions are unenforceable for the same reasons—the arbitration mechanism articulated in the Loan Agreement is illusory, and the arbitration provisions provide for an impermissible prospective waiver of federal and state rights. We need not address the prospective waiver argument because we conclude that the arbitral forum provided for in the Loan Agreement is nonexistent. As a result, and as explained herein, there is no arbitration forum in which an arbitrator could evaluate whether the arbitration provision is enforceable.

1

The Loan Agreement's arbitration provision states that disputes "will be resolved by Arbitration, which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules and the terms of this Agreement." J.A. 86. This language requires the Tribe's involvement in the arbitration,

12

but as our sister circuit courts have noted, such a tribal arbitral forum does not exist. See Inetianbor v. CashCall, Inc., 768 F.3d 1346, 1353-54 (11th Cir. 2014) (stating that the plaintiff debtor presented the court with a letter from the Tribe stating that "the Cheyenne River Sioux Tribe, the governing authority, does not authorize Arbitration" and that "the Tribe has nothing to do with any of this business"); Jackson v. Payday Fin., LLC, 764 F.3d 765, 776 (7th Cir. 2014) (noting that "The Cheyenne River Sioux Tribe 'does not authorize Arbitration,' it does not involve itself in the hiring of arbitrators, and it does not have consumer dispute rules," and thus concluding that it was an "illusory" and "unreasonable" forum). Indeed, Defendants have not contested that CRST arbitration is unavailable. Thus, we conclude, like our sister circuits, that the CRST arbitral forum is nonexistent.

2

Defendants nonetheless argue that an arbitral forum is available because the Choice of Arbitrator provision permits arbitration before AAA or JAMS without relying on a CRST representative or CRST consumer dispute rules. To evaluate this argument, we must interpret the Choice of Arbitrator clause.

As a threshold matter, we must determine what substantive law governs our interpretation. The District Court concluded that, notwithstanding the parties' choice of CRST law, New Jersey law applies to this dispute. We agree. Here, the Loan Agreement repeatedly references CRST law, but the parties have not provided the Court with any such law. Cf. Fed. R. Civ. P. 44.1. Therefore, we will apply the forum's contract interpretation principles. See Parm, 835 F.3d at 1335

("[B]ecause the parties have not provided us with a clear statement of CRST contract interpretation, we apply [the forum state's] plain-meaning rule to interpret the loan agreement."); Parnell, 804 F.3d at 1147 (applying the forum state's law to interpret the loan agreement because "the parties provided this court with no rule of tribal law regarding contract interpretation and our research uncovered none"); Jackson, 764 F.3d at 777 (stating that if an arbitration agreement's choice of law provision is invalid, then the forum's state law "would govern the question of the validity of the choice of forum provision"); see also Mastrobuono, 514 U.S. at 62-64 (applying "common-law" and "cardinal" principles of contract interpretation from the forum state, the state selected in the agreement's choice-of-law provision, and the Restatement (Second) of Contracts to construe the terms of an arbitration agreement); Gay v. CreditInform, 511 F.3d 369, 387-89 (3d Cir. 2007) (applying Pennsylvania law to interpret an arbitration agreement because "[i]n applying ordinary state law principles to evaluate arbitration agreements, . . . courts may look . . . to the laws of the involved state or territory" and "if the District Court's jurisdiction in this federal question case had been based on diversity of citizenship of the parties we would apply Pennsylvania's choice-of-law principles as the court was in the Eastern District of Pennsylvania").[6]

---

[6] In addition, New Jersey courts will enforce a choice-of-law provision unless it violates public policy. Instructional Sys., Inc. v. Computer Curriculum Corp., 614 A.2d 124, 133 (N.J. 1992). For the reasons stated by the District Court, the agreement's choice of CRST law violated public policy as defined by New Jersey law, and thus, the Court was correct to determine that New Jersey substantive law applies.

Under New Jersey law, "courts should enforce contracts as the parties intended," Pacifico v. Pacifico, 920 A.2d 73, 77 (N.J. 2007), which is assessed by examining the "plain language of the contract," "the surrounding circumstances, and the purpose of the contract," Highland Lakes Country Club & Cmty. Ass'n v. Franzino, 892 A.2d 646, 656 (N.J. 2006). In addition, "[c]ontract provisions are to be interpreted so as to give each provision meaning, rather than rendering some provisions superfluous." Carter v. Exxon Co. USA, 177 F.3d 197, 206 (3d Cir. 1999) (citing, inter alia, Ehrnes v. Hronix, 23 A.2d 592, 593 (N.J. 1942)); see also Matter of Cmty. Med. Ctr., 623 F.2d 864, 866 (3d Cir. 1980) (stating that under New Jersey law, "all parts of the writing will be given effect if possible"). Arbitration agreements should be read "liberally in favor of arbitration," but courts "may not rewrite a contract to broaden the scope of arbitration." Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 773 A.2d 665, 670 (N.J. 2001) (quoting multiple sources). This is because a "court will not make a different or better contract than the parties themselves have seen fit to enter into." Matter of Cmty. Med. Ctr., 623 F.2d at 866.

The Choice of Arbitrator provision allows the parties to select the AAA, JAMS, or some other agreed upon organization "to administer the arbitration . . . [under] the chosen arbitration organization's rules and procedures . . . to the extent that those rules and procedures do not contradict either the law of the [CRST] or the express terms of [the Loan] Agreement. . . ." J.A. 87. The role of an arbitration administrator is to "manage the administrative aspects of the arbitration, such as the appointment of the arbitrator," but the administrator "does not decide the merits of a case." AAA Consumer Arbitration Rules at 6, 39 (available at

15

https://www.adr.org/sites/default/files/Consumer%20Rules.pdf); see also JAMS: Comprehensive Arbitration Rules & Procedures, R. 2(a) & (b), 15 (allowing parties to direct appointment of an arbitrator or utilize JAMS procedures for selecting an arbitrator); Parm, 835 F.3d at 1336 n.3. Thus, the plain language of the Choice of Arbitrator provision belies Defendants' argument that it provides an available arbitral forum.

Moreover, construing the Choice of Arbitrator provision to mean that it does not provide an alternative arbitral forum to resolve the dispute is consistent with the Loan Agreement's forum selection clause, which states that the arbitration "shall be conducted by the [CRST] by an authorized representative," J.A. 86. Construing the Choice of Arbitrator provision to give parties the right to have AAA or JAMS only to administer the arbitration, subject to the Loan Agreement's requirement that a CRST representative conduct the arbitration, gives both clauses effect. To construe the Choice of Arbitrator provision to allow arbitration by someone other than a CRST representative would be irreconcilable with the forum selection clause's requirement that a CRST representative conduct the arbitration. For this additional reason, the Choice of Arbitrator provision does not provide a basis for concluding that an alternative arbitral forum is available. Parm, 835 F.3d at 1335; J.A. 87 (concluding that the Choice of Arbitrator Clause permits AAA or JAMS to administer the arbitration according to those organizations' rules only "to the extent that those rules and procedures do not contradict either the law of [CRST] or the express terms of this [Loan] Agreement").

Defendants' argument that the Loan Agreement's arbitration provisions do not require a CRST representative's involvement also fails. Defendants assert that the provision states that "any Dispute, except as provided below, will be resolved by Arbitration, which shall be conducted by the [CRST] by an authorized representative," and that the phrase "except as provided below" refers to the next paragraph, which discusses arbitration using AAA and JAMS. Reply Br. 15-16. This argument is meritless. The phrase "except as provided below" modifies the word it is closest to—"Dispute"— "mean[ing] the exceptions referred to . . . are exceptions to the types of disputes that require arbitration . . . [and] not exceptions to the requirement that arbitrations be 'conducted by the [CRST] by an authorized representative.'"[7] Parm, 835 F.3d at 1336 (citing Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts 152 (2012) for interpretive canons of English usage). Indeed, later parts of the Loan Agreement[8] demonstrate that this interpretation is the correct reading because those subsequent portions explicitly exempt certain types of disputes from the arbitration

---

[7] This interpretive canon is known as the last antecedent rule. See Disabled in Action of Pa. v. SEPTA, 539 F.3d 199, 210 & n.13 (3d Cir. 2008).

[8] See, e.g., J.A. 88 (subjecting the enforceability of the class action waiver "solely [to] a court of competent jurisdiction located within the Cheyenne River[] Sioux Tribal Nation, and not [to] the arbitrator"); J.A. 89 (identifying a "Small Claims Exception" that allows parties to seek adjudication "in a small claims tribunal in the Cheyenne River Sioux Tribal Small Claims Court").

provisions.[9]   Therefore, the Loan Agreement's arbitration provisions direct arbitration to an illusory CRST forum, and the Loan Agreement does not provide an alternate forum.[10]

C

The CRST arbitral forum's nonexistence does not automatically invalidate the arbitration agreement because, according to Defendants, the agreement's severability clause allows invalid provisions, such as the selection of an illusory

[9] Because we are examining arbitration procedures and not the scope of the arbitration agreement, the preference for construing ambiguity in favor of arbitration does not apply. See, e.g., Granite Rock v. Int'l Bhd. of Teamsters, 561 U.S. 287, 301 (2010) (explaining that the rebuttable presumption of arbitrability applies "only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand"); First Options of Chi., 514 U.S. 938, 945 (1995) (stating that "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration") (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)); Mastrobuono, 514 U.S. at 62 (stating that "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration"); CardioNet, Inc. v. Cigna Health Corp., 751 F.3d 165, 172 (3d Cir. 2014) ("We must resolve 'any doubts concerning the scope of arbitable issues . . . in favor of arbitration.'" (quoting Moses H., 460 U.S at 24-25)).

[10] Defendants' evidence that AAA and JAMS have conducted arbitrations does not mean that the arbitrations complied with the Loan Agreement.

forum, to be severed. Under New Jersey law, courts may not sever language from an agreement where doing so would "defeat the central purpose of the contract." Jacob v. Norris, McLaughlin & Marcus, 607 A.2d 142, 154 (N.J. 1992). To determine the agreement's primary purpose, courts look to "the parties' intent at the time the agreement was executed, as determined from the language of the contract and the surrounding circumstances." Parilla v. IAP Worldwide Servs., VI, Inc., 368 F.3d 269, 288 (3d Cir. 2004).

Here, the Loan Agreement reflects that the CRST arbitration provision was an integral, not ancillary, part of the parties' agreement to arbitrate, despite the inclusion of a severability clause in the contract. J.A. 89 ("If any of this Arbitration Provision is held invalid, the remainder shall remain in effect.") The Loan Agreement references CRST or its rules in most paragraphs concerning arbitration. See Inetianbor, 768 F.3d at 1350-51. For example, the arbitration provision states that arbitration "shall be conducted" by the CRST, J.A. 86, without referencing any other arbitral forums, and more importantly, the Loan Agreement as a whole repeatedly reiterates that it is subject to and governed "solely" and "exclusive[ly]" by CRST's jurisdiction and law.[11] J.A. 80

---

[11] As discussed previously, the Choice of Arbitrator provision permitting administration by AAA or JAMS does not offer an alternative forum because (1) that clause allows those organizations to only administer the arbitration and does not authorize them to decide disputes; (2) those entities are permitted to provide administrative support only "to the extent that [their] rules and procedures do not contradict" CRST law and the Loan Agreement's terms; and (3) the arbitration provision requires that a CRST representative conduct the

("This Loan Agreement is subject solely to the exclusive laws and jurisdiction of the [CRST].").[12] These references reflect that the primary purpose of the Loan Agreement was to arbitrate disputes subject to CRST oversight and its laws. See Parm, 835 F.3d at 1338 (refusing to compel arbitration because the CRST forum is unavailable and "pervasive references to the tribal forum and its rules provide evidence that the forum selection clause was not simply an ancillary concern but an integral aspect of the parties' agreement to arbitrate"); Inetianbor, 768 F.3d at 1350-53 (similarly refusing to compel arbitration despite the presence of a severability clause and concluding that the forum selection clause was integral, in part because the loan agreement "references the Tribe in five of its nine paragraphs regarding arbitration"); cf. Dillon v. BMO Harris Bank, N.A., 856 F.3d 330, 336-37 (4th Cir. 2017) (finding that the CRST choice of law provisions are not severable because they "were essential to the purpose of the arbitration agreement"); Hayes v. Delbert Servs. Corp., 811 F.3d 666, 675-76 (4th Cir. 2016) (stating that the

---

arbitration. Thus, the Choice of Arbitrator provision "does not affect the importance of the CRST forum in the agreement." Parm, 835 F.3d at 1338.

[12] E.g., J.A. 85 ("You also expressly agree that this Agreement shall be subject to and construed in accordance only with the provisions of the laws of the [CRST], and that no United States state or federal law applies to this Agreement."); J.A. 88-89 ("This arbitration provision . . . shall be governed by the law of the [CRST]. . . . [t]he arbitrator's award may be filed in the [CRST] Court, which has jurisdiction in this matter . . . . All parties . . . shall retain the right to seek adjudication in a small claims tribunal in the [CRST] Small Claims Court . . . .") (emphasis omitted).

unenforceable CRST choice of law provisions cannot be severed and refusing to enforce arbitration because "the offending provisions go to the core of the arbitration agreement"); Jackson, 764 F.3d at 780-81 (holding that FAA § 5 does not apply to a similar version of the loan agreement at issue here because the arbitral process cannot be saved simply by substituting an arbitrator). Given the centrality of CRST's involvement in the arbitration as reflected by terms of the Loan Agreement, compelling arbitration before a different arbitrator and without CRST oversight would amount to an impermissible rewriting of the contract. See Parm, 835 F.3d at 1335 (acknowledging the "presumption in favor of arbitration," but cautioning that "courts are not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties."); Garfinkel, 773 A.2d at 670 (recognizing that while arbitration agreements should be construed "liberally in favor of arbitration . . . [a] court may not rewrite a contract to broaden the scope of arbitration"); Matter of Cmty. Med. Ctr., 623 F.2d at 866 ("[T]he court will not make a different or better contract than the parties themselves have seen fit to enter into."); Cargill Rice, Inc. v. Empresa Nicarguense Dealimentos Basicos, 25 F.3d 223, 226 (4th Cir. 1994) ("Arbitration awards made by arbitrators not appointed under the method provided in the parties' contract must be vacated."). We therefore join our sister circuits in concluding that the CRST arbitral forum clause is integral to the entire arbitration agreement and cannot be severed.[13] See Parm, 835 F.3d at 1338; Inetianbor, 768 F.3d at 1350-53.

---

[13] The cases Defendants rely on to support their severance argument are distinguishable. For example, the arbitration provision in Khan v. Dell, Inc., stated that all

21

disputes "shall be resolved exclusively and finally by binding arbitration administered by the National Arbitration Forum [NAF]," but NAF was unavailable. 669 F.3d 350, 354-55 (3d Cir. 2012). Our Court observed that it was ambiguous whether "exclusively" was intended to modify "binding arbitration" or NAF, and ultimately resolved the ambiguity in favor of arbitration due to the "liberal federal policy in favor of arbitration." Id. at 355-56. Here, however, unlike the contract in Khan, the Loan Agreement contains pervasive references to CRST's laws and exclusive jurisdiction, which reflect that the Loan Agreement's purpose was to arbitrate under CRST oversight. Moreover, the Loan Agreement's forum selection clause, viewed in the overall context of the agreement as a whole, differs markedly from the ancillary and discrete fee and cost, damages, and class action waiver provisions found to be severable in Kaneff v. Del. Title Loans, Inc., 587 F.3d 616, 625 (3d Cir. 2009); Booker v. Robert Half Int'l, Inc., 413 F.3d 77, 83-86 (D.C. Cir. 2005); Spinetti v. Serv. Corp. Int'l, 324 F.3d 212, 219-20 (3d Cir. 2003); Gannon v. Circuit City Stores, Inc., 262 F.3d 677, 680-81 (8th Cir. 2001); Muhammad v. Cty Bank of Rehoboth Beach, Del., 912 A.2d 88, 103 (N.J. 2006), preempted in part by statute, Litman v. Cellco P'ship, 655 F.3d 225, 230 (3d Cir. 2011); Garrett-Scheier v. Muller Auto. Grp., Inc., No. HNT-L-135-10, 2010 WL 1599419, at *4 (N.J. Super. Ct. Law Div. Apr. 16, 2010).

Furthermore, it would be nonsensical for a court to appoint an arbitrator where a drafter created an agreement to arbitrate in a forum that does not exist. Defendants should not be permitted to tender agreements containing such a façade and then expect courts to step in and order the parties to proceed to

IV

Because the Loan Agreement's forum selection clause is an integral, non-severable part of the arbitration agreement and because the CRST arbitral forum designated in that clause is illusory, the entire arbitration agreement, including the delegation clause, is unenforceable.[14]  See Parm, 835 F.3d at 1338 (declining to enforce a delegation clause and an arbitration agreement because the arbitral forum provided for in the arbitration agreement does not exist); Inetianbor, 768 F.3d at 1353-54 (same).  Thus, the District Court had the authority to decide whether the arbitration agreement was valid, correctly decided that it was not, and did not err in

---

arbitration.  See Inetianbor, 768 F.3d at 1356-57 (Restani, J., concurring).

[14] Federal law presumes forum selection clauses to be valid, but that presumption is overcome where the resisting party shows that enforcement would be "unreasonable under the circumstances."  Foster v. Chesapeake Ins. Co., Ltd., 933 F.2d 1207, 1219 (3d Cir. 1991) (internal quotation marks omitted) (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972)).  Enforcement is unreasonable where either the forum selected is "so gravely difficult and inconvenient that [the resisting party] will for all practical purposes be deprived of his day in court," or the clause was procured through "fraud or overreaching."  Foster, 933 F.2d at 1219 (quoting M/S Bremen, 407 U.S. at 15-18).  Applying this standard to the arbitration agreement at issue here, we conclude without hesitation that enforcement would be unreasonable.

denying Defendants' motion to compel arbitration. Therefore, we will affirm.[15]

---

[15] Judge Vanaskie would also affirm on the alternative ground that the Loan Agreement impermissibly waives a borrower's federal and state statutory rights, thereby rendering the arbitration clause unenforceable. In this regard, Judge Vanaskie endorses the reasoning of the District Court at J.A. 14-16 and the Fourth Circuit's analysis in Hayes, 811 F.3d at 673-74, in which Judge Wilkinson observed that "a party may not underhandedly convert a choice of law clause into a choice of no law clause," id. at 675. Judge Vanaskie agrees with the District Court's conclusion that the Loan Agreement establishes "sham dispute resolution procedures," J.A. 16, and would affirm the denial of the motion to compel arbitration on this ground as well.