NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 18-3333
_____

SALLY DELOREAN, as administratrix for
The Estate of John Z. DeLorean
                                        Appellant

v.

DELOREAN MOTOR COMPANY (Texas)
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 2-18-cv-08212)
District Judge: Honorable Jose L. Linares
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 21, 2019
_____

Before: GREENAWAY, JR., PORTER, and COWEN, *Circuit Judges*.

(Opinion Filed:  December 5, 2019)

_____

OPINION[*]

_____

GREENAWAY, JR., *Circuit Judge*.

This case requires that we interpret a Settlement Agreement entered into by Sally DeLorean as administratrix of the Estate of John Z. DeLorean (the "Estate") and DeLorean Motor Company (Texas) ("DMC Texas") in the action *Estate of DeLorean v. DeLorean Motor Company (Texas)*, No. 2:14-cv-1146 (D.N.J.). The question presented is whether the Settlement Agreement precludes the Estate's claims in this action. The District Court found that it did, and the Estate appealed. For the following reasons, we will affirm.

## I. BACKGROUND

In the 1970s, John Z. DeLorean founded the DeLorean Motor Company ("DMC"). DMC designed, manufactured, and sold an automobile named the DMC 12, which featured gull-wing doors. DMC ceased operations in 1979 and was subsequently dissolved through bankruptcy proceedings.

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

### A. The Universal Agreement

DMC may have gone defunct decades ago, but the DeLorean automobile remains culturally relevant in large measure due to Universal Pictures's popular "Back to the Future" film series, which prominently features the DeLorean automobile. On March 14, 1989, Mr. DeLorean entered into an agreement with Universal ("the Universal Agreement"). Under the Universal Agreement, Mr. DeLorean granted Universal certain exclusive "rights in and to the name and appearance of the DeLorean automobile in order to enable [Universal] to engage in certain merchandising and commercial tie-up activities in connection with the ['Back to the Future' films]." App. 26. When he entered into this contract, Mr. DeLorean represented that he was the sole owner of the rights in the material granted under the contract. In consideration for these exclusive rights, Universal agreed to pay Mr. DeLorean five percent of Universal's "net receipts . . . from merchandising and commercial tie-ups in connection with the ['Back to the Future' films]." App. 27. The contract states that it "shall bind and inure to the benefit of [Mr. DeLorean's] and [Universal's] respective heirs, legal representatives, successors and assigns." App. 29.

Accordingly, upon Mr. DeLorean's death in 2005, the Estate alleges that it succeeded to the rights under the Universal Agreement. The Estate alleges that Universal made some payments under the Universal Agreement but stopped doing so at a time unknown to the Estate. The Estate further alleges that Mr. DeLorean did not have a copy

3

of the Universal Agreement at the time of his death and that the Estate therefore could not enforce Mr. DeLorean's rights under it.

## B. DMC Texas and the Settlement Agreement

In 1997, DMC Texas purchased many of the assets sold in DMC's bankruptcy. These included, *inter alia*: inventory, good will, trade names, and other tangible and intangible assets. DMC Texas subsequently registered two trademarks: one of the stylized "DeLorean" logo on the rear bumper of the car and one of the "DMC" logo on the front grill. As of 2018, DMC Texas sold automobiles, automobile parts, clothing, video game licenses, commercial licenses, and various other merchandise. It also licensed its trademarks to various companies.

The Settlement Agreement provides, in relevant part, that DMC Texas will pay the Estate the full amount of any claims asserted in the 2014 Action and that the Estate, in exchange, would release and discharge all claims "that were sought, or could have been sought, in the [2014 Action]," except for the obligations imposed upon DMC Texas by the Settlement Agreement. App. 21–22. Specifically, DMC Texas agreed not to participate willingly "in any legal proceeding against DMC Texas in the future in connection with" DMC Texas's use of the name "DeLorean Motor Company" or any of the DeLorean Marks. App. 22. In addition, the Settlement Agreement acknowledged DMC Texas's "worldwide rights . . . to use, register, and enforce any of [sic] DeLorean Marks for any and all goods and services, relating to automobile dealerships,

4

automobiles, automobile parts and accessories, clothing, and promotional items." *Id.* It also provided that any disputes arising under it would be governed by New Jersey state law. Notably, the Settlement Agreement did not reference the Universal Agreement.

### C. Universal's Failure to Pay Under the Universal Agreement

In discovery during the 2014 action, the Estate became aware of the Universal Agreement. App. 7. In February 2018, the Estate contacted Universal to determine the amount of royalties that Universal owed to the Estate under the Universal Agreement. The Estate claims that Universal represented that DMC Texas had indicated that it possessed the rights under the Universal Agreement and that the overdue royalty payments were remitted to DMC Texas instead of the Estate. The Estate alleges that in April 2018, counsel for DMC Texas threatened to bring a lawsuit against the Estate for tortious interference unless the Estate immediately retracted its request that Universal make royalty payments to the Estate under the Universal Agreement.

### D. The District Court Decision

The Estate then commenced this action seeking: (1) a declaratory judgment that the Settlement Agreement does not grant DMC Texas any rights under the Universal Agreement and (2) an order directing DMC Texas to account for and pay to the Estate all money it had received from Universal under the Universal Agreement. DMC Texas moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The Estate opposed that motion and filed a cross-motion for summary judgment.

5

The District Court enforced the Settlement Agreement and found that dismissal was warranted. The District Court explained that the main issue before it was "whether the materials licensed in the Universal Agreement were included in the Settlement Agreement, thereby barring Plaintiff from asserting a claim under the Universal Agreement as a matter of law." App. 9. The District Court first found that both agreements covered the same subject matter. The District Court then found that the context of the agreements indicated that the Estate's claims to the royalties under the Universal Agreement were incorporated into the Settlement Agreement and therefore barred by the Settlement Agreement. The Estate timely appealed.

## II. DISCUSSION

### A. Jurisdiction and Standard Review

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over a decision to grant a motion to dismiss. *Delaware Nation v. Pennsylvania*, 446 F.3d 410, 415 (3d Cir. 2006).

### B. Legal Standard

"[I]n deciding a motion to dismiss, all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them." *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (citation omitted). To withstand a Rule 12(b)(6) motion to dismiss, a

complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## C.  Analysis

The Estate makes several arguments on appeal asserting why the District Court should have found that DMC Texas did not have authority to enforce the Universal Agreement in its own name.  None of these arguments is availing, however, because the Settlement Agreement barred the Estate from suing DMC Texas for the conduct it engaged in here.

In accordance with the terms of the Settlement Agreement under which this dispute arises, we apply New Jersey contract law.  Neither party argues that the Settlement Agreement was entered into involuntarily; therefore, we "enforce the agreement as a binding contract voluntarily entered by both parties." *D.R. by M.R. v. E. Brunswick Bd. of Educ.*, 109 F.3d 896, 901 (3d Cir. 1997).  New Jersey law requires that we "enforce contracts as the parties intended," which requires that we "examin[e] the plain language of the contract, the surrounding circumstances, and the purpose of the contract." *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 228–29 (3d Cir. 2018).

The Settlement Agreement incorporates the subject matter of the Universal Agreement.  Indeed, the Settlement Agreement expressly states that the Estate agrees not to sue DMC Texas for its use, registration, or enforcement of the DeLorean Marks "in

7

conjunction with the automobile industry and associated business ventures, including those associated with the DeLorean automobile . . . and related brand merchandising and licensing associated or related to the business of [DMC Texas] and its associated brand." App. 22.

As the District Court explained, the subject matter of the Universal Agreement clearly falls within the ambit of this clause in at least three ways. First, the marks described in both agreements include the DMC logo and the stylized word DeLorean. Second, both agreements cover these marks as they relate to the DeLorean automobile's image. Third, both agreements implicate the use of these marks in the context of manufacturing and distributing products that display the DeLorean automobile's image and logo. Accordingly, we will affirm the District Court's holding that the subject matter of the Universal Agreement and the Settlement Agreement overlap.

The remaining question then is whether DMC Texas's dealings with Universal fall within its "worldwide rights . . . to use, register, and enforce" these marks in connection with its business or brand. We find that it does. In addition to selling automobiles and other products, DMC Texas's business involves licensing its trademarks and rights to the DeLorean automobile brand to other companies, such as Mattel, Inc., Target, and Microsoft. Here, the demand that Universal pay DMC Texas for the use of marks for which it has "worldwide rights" falls within its business of licensing and enforcing the licenses to its marks and other intellectual property. The Estate insists that DMC Texas

was not "using" its marks when it requested payments from Universal, but the Estate fails to make any compelling argument why that conduct does not constitute enforcing DMC Texas's rights to the marks at issue, which is also expressly covered by the Settlement Agreement.

The Estate's argument that DMC Texas's interference with the Estate's contract with Universal only occurred after the 2014 action and therefore could not be contemplated by the Settlement Agreement is unavailing for two reasons. First, the Settlement Agreement is not merely retrospective. Instead, it both resolves all claims that were sought and could have been sought in the 2014 action and recognizes DMC Texas's rights to use these marks in the future. Those rights, as explained above, include the enforcement of DMC Texas's marks and licenses to those marks. Second, the Settlement Agreement expressly carves out specific areas in which the Estate retains its right to pursue legal action against DMC Texas—namely, any other use of the name DeLorean, any aspect of John Z. DeLorean's life, and any depiction of his likeness. That the Universal Agreement is not mentioned in the Settlement Agreement suggests that the parties did not intend to permit the Estate to be able to sue DMC Texas for attempting to enforce its rights to the marks against other entities, including Universal. Accordingly, we find that the Settlement Agreement shields DMC Texas from suit brought by the Estate for the conduct at issue here.

9

Because the Settlement Agreement bars the Estate from pursuing this action, we do not have to determine whether the Estate assigned its rights under the Universal Agreement to DMC Texas. Likewise, we do not reach DMC Texas's alternative arguments that (1) the Estate has no right to the intellectual property covered by the Universal Agreement, and (2) judicial estoppel bars the Estate's claims.

## III. CONCLUSION

For the foregoing reasons, we will affirm the judgment of the District Court.