In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 15-3346, 15-3208

CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS
PENSION FUND and ARTHUR H. BUNTE, JR., Trustee,

*Plaintiffs-Appellees / Cross-Appellants*,

*v.*

BULK TRANSPORT CORP.,

*Defendant-Appellant / Cross-Appellee*.

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 C 9112 — **Thomas M. Durkin**, *Judge*.

ARGUED APRIL 1, 2016 — DECIDED APRIL 29, 2016

Before POSNER, EASTERBROOK, and KANNE, *Circuit Judges*.

POSNER, *Circuit Judge*. The Multiemployer Pension Plan Amendments Act of 1980 amends ERISA by imposing liability on employers who withdraw, partially or completely, from participation in an underfunded multiemployer pension fund, thus reducing the fund's resources for providing the pension money to which employees of the fund's members are contractually entitled. See 29 U.S.C. §§ 1381 *et seq.*

Central States, Southeast and Southwest Areas Pension Fund is such a fund, and Bulk Transport Corp. is a member of the Fund and has made contributions to the pension account of Terry Loniewski, one of its employees. Bulk had certified that Loniewski was entitled by a collective bargaining agreement between Bulk and a Teamsters local to participate in the Central States Pension Fund even though the agreement was limited by its terms to the drivers that Bulk employed and Loniewski was a mechanic—he had never been a driver in the more than 40 years that he had worked for the company. Although for decades Bulk had treated Loniewski as though he were covered under the company's collective bargaining agreements, it now denies that he was covered and has demanded that Central States refund the $49,000 that Bulk had contributed to Loniewski's pension account between 2002 and 2012. (The rules of the Central States Pension Fund limit refunds to money contributed to the Fund during the ten years preceding the refund request.)

The Fund denied the request and filed this suit, in which it seeks a declaratory judgment that Bulk is not entitled to the refund. Bulk counterclaimed, arguing that it is entitled to the refund, because it contributed to Loniewski's account by mistake. The district judge rejected Bulk's claim. He could not believe that Bulk had employed Loniewski for more than 40 years as a mechanic, contributing to the Central States Pension Fund on his behalf, without knowing he'd never been a driver. In a 2003 settlement agreement between Bulk and the Fund, Bulk had agreed to continue making contributions on Loniewski's behalf as long as he "continue[d] to be covered by any collective bargaining agreement" between Bulk and the Teamsters local. The word "continued" implies recognition by Bulk that Loniewski was already covered—

but more than that, it implies a commitment to continue contributing to the Fund on Loniewski's behalf until such time as Bulk and the Teamsters adopted a collective bargaining agreement that excluded him—which didn't happen. On the contrary, collective bargaining agreements made in 2004 and 2009 stated that "in accordance with" the 2003 settlement agreement Bulk agreed to contribute to the Central States Fund specified amounts for named employees—and one of the named employees was Loniewski.

Bulk tells us that no one wants to take away Loniewski's pension entitlement—and that in fact it's committed to paying the pension if the Fund refuses to do so, though Bulk hasn't reduced this "commitment" to writing and of course wants Central States to fund his pension instead of Bulk. But if Loniewski has been mistakenly covered by the collective bargaining agreements between Bulk and the Teamsters local all these years and hence by Central States, which funds the pension commitments made in those agreements, the fault is Bulk's, not Central States', which didn't know, or have a duty to inquire into, whether Loniewski was or was not a driver. Bulk being at fault, the district court correctly refused to order a refund—and for the further reason that the collective bargaining agreements to which Bulk was a party, and the 2003 settlement agreement that we mentioned, were explicit that Loniewski *was* covered by the agreements, and the parties' conduct was consistent with that understanding.

That doesn't end the case, however, for there is also a question of what rules govern the arbitration proceedings to determine Bulk's withdrawal liability. As we noted, the Multiemployer Pension Plan Amendments Act of 1980 imposes

liability on employers who withdraw, partially or complete-
ly, from an underfunded multiemployer pension fund. The
Central States Fund assessed Bulk with withdrawal liability
of $740,000 for the years 2010 through 2012, and Bulk con-
tends that the amount is excessive. The issue of Bulk's obli-
gation to contribute to Loniewski's pension account bears on
(though it is distinct from) the issue of withdrawal liability
because if Bulk was never obligated to make those contribu-
tions, it follows that it withdrew from the Fund completely
in 2009, when the last member of the Teamsters local other
than Loniewski retired, rather than in 2012, as the Fund con-
tends. The consequence should Bulk prevail would be to re-
duce its withdrawal liability from $739,700 to $473,300.

The Multiemployer Pension Plan Amendments Act re-
quires an employer who wants to dispute its withdrawal lia-
bility to initiate arbitration with the multiemployer pension
fund, 29 U.S.C. § 1401(a)(1), and Bulk did this. (To arbitrate it
had first to deposit with the Central States Fund the amount
in dispute, 29 U.S.C. § 1399(c)(2); it did that as well.) The
parties disagree however about the rules governing the arbi-
tration. Bulk's counterclaim asked the district judge to bar
the Fund from enforcing its own rules, which require arbi-
tration by and conforming to the procedures of the Ameri-
can Arbitration Association. The judge agreed (in an opinion
separate from his opinion rejecting Bulk's refund claim);
Central States, cross-appealing, challenges that ruling.

The Pension Benefit Guaranty Corporation, acronym
PBGC, is a federal agency that regulates pension plans and
guarantees benefit payments, and all arbitrations of disputes
over liability of employers for withdrawing from pension
funds must be "conducted in accordance with fair and equi-

table procedures … promulgated by" that agency. 29 U.S.C. § 1401(a)(2). The procedures (referred to as the "default rules" of arbitration) are set forth in 29 C.F.R. §§ 4221.1–13. But the agency can authorize the use of other procedures to govern arbitration, see § 4221.14, and it has approved, and the agreement between Central States and its members requires the use of, the American Arbitration Association's Multi-employer Pension Plan Arbitration Rules for Withdrawal Liability Disputes. Those rules require parties wanting arbitration by the AAA to pay fees to the association for administering its arbitration rules, in addition to the fees the parties pay the arbitrator. No such administrative fees are required by the PBGC's rules.

The latest AAA rules to be approved by the PBGC (the 1986 rules) would have required Bulk to pay only a $650 fee to initiate AAA arbitration. But in 2013 the association upped the fees and if the new fees are applicable Bulk will have to pay not $650 but $6100, consisting of an initial filing fee of $4350 and a final fee of $1750 when the first hearing by the arbitrators is scheduled. The new rules have yet to be approved by the PBGC, however; approval requires the agency to find that the rules are "substantially fair to all parties." 29 C.F.R. §§ 4221.14(a), (d). So the agency not having yet approved the new rules, the judge ruled that the old rules govern and Bulk will have to pay just the $650 fee. Bulk tendered $650 to the AAA, which responded that the fee didn't comply with the new fee schedule, which the association was discussing with the PBGC. In fact the AAA has asked the agency to approve the new fee schedule—which is all that's new in the new rules—but the agency has yet to act on the request.

Unfortunately there is ambiguity concerning whether the agency's approval of the fee change is required. Section 7 of the AAA's Multi-employer Pension Plan Arbitration Rules for Withdrawal Liability Disputes (the 1986 rules), requires payment to the AAA by the party initiating an arbitration, and by the answering party as well if that party asks for money in its answer, of "the appropriate administrative fee as provided in the [AAA's] Administrative Fee Schedule." A separate (unnumbered) section in the rules document, captioned "Administrative Fees," provides that "the AAA shall prescribe an Administrative Fee Schedule … [and] the schedule in effect at the time of filing … shall be applicable." Another section of the document is captioned "Administrative Fee Schedule" and states that the fee is based on the "amount in dispute" and specifies three fees, for three different amounts in dispute. The lowest fee, and it would be the one applicable in this case on the basis of the amount in dispute, is $650.

The PBGC had approved the rules in 1986. See Arbitration of Disputes in Multiemployer Plans; PBGC-Approved Arbitration Procedure, 51 Fed. Reg. 22585 (June 20, 1986). Although the approval hasn't been rescinded, the statement in the rules that the fee "schedule in effect at the time of filing" of the request for arbitration should govern implies that the fee can be changed at any time without agency approval. If so, Bulk will have to pay the fees adopted by the AAA in 2013. Since the fee schedules are components of the PBGC arbitration rules, the agency could force the AAA to cut the fees that it adopted in 2013, see 29 C.F.R. § 4221.14(d), but it hasn't done so.

The agency has yet to approve the new rules, containing the new fee schedule, and if its approval is not required for the new schedule to go into effect, why has the AAA requested the agency to approve the new rules and why has the agency agreed to consider the AAA's request—going so far as to publish a notice seeking comments on it, see Pendency of Request for Approval of Alternative Arbitration Procedure; American Arbitration Association, 81 Fed. Reg. 15578, 15579 (March 23, 2016)—when the *only* change made by the 2013 rules is the change in the fee schedule. (The "Pendency of Request" statement that we just cited acknowledges that "other than significant changes to the Administrative Fee Schedule, the 2013 MPPAR [Multi-employer Pension Plan Arbitration Rules for Withdrawal Liability Disputes] are identical to the 1986 MPPAR that PBGC previously approved.")

But although the AAA's 2013 fee increase was its first fee increase in 27 years, we have no information about when the next increase (or decrease) is likely, or the next after that, and so on. If the increases become frequent, having to get the PBGC's permission for every one of them could slow down the arbitration process. It is more efficient to place the burden not on the AAA to obtain the PBGC's permission for every fee change, but on an aggrieved party to arbitration to complain that the fee increase is unwarranted. And for this reason, answering the question left open in *Central States, Southeast & Southwest Areas Pension Fund v. Allega Concrete Corp.*, 772 F.3d 499, 501 (7th Cir. 2014), we hold that the PBGC's approval of a new fee schedule is not required for the new fees to be charged. We add that the agency's delay in responding to the AAA's request for approval may reflect a judgment that, since only the fee schedule is changed by

the new rules and the old rules appear to have allowed fee changes without separate approval, the agency has no reason to act quickly on the request.

We note that Congress ordered the agency to promulgate arbitration procedures, 29 U.S.C. § 1401(a)(2), and that the agency's own regulations require it to approve "alternative arbitration procedure[s]" that satisfy the standard of substantial fairness to all parties, 29 C.F.R. §§ 4221.14(a), (d), and an agency's interpretation of its own regulations is entitled to a measure of judicial deference. *Thomas Jefferson University v. Shalala*, 512 U.S. 504, 512 (1994). It's true that in approving the 1986 rules the agency had said that "the revised rules will continue to satisfy the criteria for approval … . This approval is effective June 20, 1986 *and will remain effective until revoked by the PBGC through a Federal Register notice*." Arbitration of Disputes in Multiemployer Plans; PBGC-Approved Arbitration Procedure, *supra*, 51 Fed. Reg. at 22585 (emphasis added); see also Arbitration of Disputes in Multiemployer Plans; PBGC-Approved Arbitration Procedure, 50 Fed. Reg. 38046-03 (Sept. 19, 1985) (similar language approving the 1981 AAA rules). But the agency did not say that every fee change must be approved before it can be put into effect.

Fearful that the AAA, which is not a party to this litigation, would continue to refuse to arbitrate until the agency decided whether to approve the new rules, and not knowing when the agency would act, the district judge ordered the parties to arbitrate their dispute under the PBGC's default rules of arbitration. He said that a "finding that Bulk Transport has properly initiated arbitration is cold comfort if the AAA refuses to accept its $650 payment and the Pension

Fund insists that the parties utilize the AAA. The Court understands from the parties' representations that the AAA has not completely ruled out the possibility that it *will* accept the $650 payment. But the Court is unwilling to delay the matter any further pending open-ended discussions between two parties (the AAA and the PBGC) that are not before the Court. Thus, the Court directs the parties to arbitrate their dispute pursuant to the PBGC's default rules." Those rules, cited earlier in this opinion, are elaborate, consisting of 13 subsections some of which have their own subsections. We have been given no reason to think them inferior to the AAA rules. And because they don't impose a fee for initiating arbitration, they don't trip over the fee-increase issue. Remitting the parties to those rules would therefore permit the arbitration to proceed without anyone's having to wait for the PBGC to decide whether to approve the AAA's new (2013) fee schedule. But if our earlier analysis is correct, the AAA is not required to await the agency's approval of the 2013 rules; it can go ahead and charge Bulk $6100 to initiate its arbitration against Central States.

Now $6100 is a significant multiple of $650. But to Bulk it must be chicken feed. Bulk is a substantial trucking and truck-rental company, owning at last count 87 trucks and tractors and other heavy equipment. See Bulk Transport Corp., www.quicktransportsolutions.com/truckingcompany/ indiana/bulk-transport-corp-usdot-125525.php; www.manta. com/c/mmcszfc/bulk-transport-corp; www.bulkequip.com/f aqs.html (all three websites visited April 27, 2016). Its fierce opposition to having to pay a $6100 fee for arbitration by the AAA, preferring arbitration under the PBGC's default rules (with their zero fee), is more likely to reflect a belief that those rules are more favorable to it than a belief that the ex-

tra expense of initiating AAA arbitration under the 2013 rules instead of the 1986 rules will jeopardize the company's solvency.

We therefore affirm the district judge's ruling on the refund issue but reverse and remand with respect to the applicable arbitration rules.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED