

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| RIDGE NATURAL RESOURCES, L.L.C, CALVIN SMAJSTRLA, CHRISTOPHER HAWA, and WILSON HAWA, | § | No. 08-17-00227-CV |
| | § | |
| Appellants, | § | Appeal from the |
| | § | |
| v. | § | 109th District Court |
| | § | |
| DOUBLE EAGLE ROYALTY, L.P., | § | of Winkler County, Texas |
| | § | |
| Appellee. | § | (TC# DC 17-17111) |
| | § | |

**DISSENTING OPINION**

In this case, the majority identified the initial step as necessarily deciding whether Double Eagle challenged the contract formation of the arbitration agreement itself when it resisted compelled arbitration in the trial court. Because the majority confirms that Double Eagle signed the agreement at large, it then determines that prima facie proof of contract formation was met initially and no argument on formation was actually asserted. Based on the authenticity of the signature, the majority then shifted the burden of proof onto Double Eagle to negate the validity of the arbitration agreement itself as the party resisting arbitration. Because I disagree, respectfully I dissent.

Contrary to the majority's approach, I would conclude that Ridge Natural Resources (Ridge) bore the burden of establishing the validity of the arbitration agreement initially, and in

that regard, it failed to show the agreement contained material terms that were definite and certain as to the arbitration organization chosen and the governing rules to apply. Moreover, because I conclude there was a failure of contract formation as to the arbitration agreement itself, I would not reach the merits of the affirmative defense of unconscionability. The determinative factor is not whether the contract was signed, but rather, whether it was properly formed. Being that Ridge sought to enforce arbitration, the burden of proof remained with it to establish proper contract formation.

As is easily recognized, in paragraph 5 of the parties Oil & Gas Royalty Lease, there are two sentences that are directly in conflict. Regarding the parties' agreeing to submit to arbitration, one sentence requires the American Arbitration Association (AAA), and in another sentence, it requires submission to JAMS,[1] a different organization widely known by its four-letter acronym. No other term or provision is included identifying how the parties' agreed to prioritize or choose among either of these two organizations. The majority identifies these conflicting sentences as "troubling as an *interpretational matter*[.]" [Emphasis in orig.]. It concludes, however, that the issue is not "assigned for our review," and then discusses instead the unconscionability arguments raised against enforcement.

To the extent the majority implicitly presumes the validity of the arbitration agreement itself, as a threshold issue, I disagree with that approach. Instead, I would conclude that the purported arbitration agreement does not qualify as a properly formed contract. In my view, the ambiguity created by the requirement that two different arbitration organizations—AAA and

---

[1] JAMS is an acronym for Judicial Arbitration and Mediation Services, Inc. (J•A•M•S). *See* https://www.jamsadr.com-/about-jams/, last accessed August 10, 2018; *Jaster v. Comet II Const., Inc.,* 438 S.W.3d 556, 578 n.19 (Tex. 2014).

JAMS—must both administer and govern the parties' arbitration proceeding is an irreconcilable issue that renders the arbitration agreement itself invalid as a matter of law. Given the absence of clear and unmistakable evidence that the parties' intended to arbitrate—but instead inserted mandatory language requiring use of two mutually exclusive arbitration organizations—I view the arbitrability of their controversy as being unsupported by a validly formed, binding arbitration agreement. Thus, the affirmative defense of unconscionability is not yet implicated in terms of contract enforceability. Because a lawful basis exists to deny the motion to compel arbitration, I would affirm the trial court's ruling.

## I.

### Ridge carried the Burden of Establishing the Validity of the Purported Arbitration Agreement

As the party seeking to enforce the arbitration agreement, Ridge carried the burden of establishing that the arbitration agreement was valid and enforceable. *See J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 227 (Tex. 2003)(a party attempting to compel arbitration must establish (1) a valid arbitration agreement and (2) that the dispute in question falls within its scope); *United Rentals, Inc. v. Smith*, 445 S.W.3d 808, 812 (Tex.App.--El Paso 2014, no pet.). A valid agreement to arbitrate is "a settled, threshold requirement to compel arbitration." *In Estate of Guerrero*, 465 S.W.3d 693, 699 (Tex.App.--Houston [14th Dist.] 2015, pet. denied)(citing *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737-38 (Tex. 2005)(orig. proceeding)); *see also First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S. Ct. 1920, 1924, 131 L.Ed.2d 985 (1995)(holding that, when deciding whether the parties agreed to arbitrate, "courts generally . . . should apply ordinary state-law principles that govern the formation of contracts").

3

A presumption favoring arbitration arises "only after the party seeking to compel arbitration proves that a valid arbitration agreement exists." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 737 (quoting *J.M. Davidson, Inc.*, 128 S.W.3d at 227); *see also Jody James Farms, JV v. Altman Group, Inc.*, 547 S.W.3d 624, 631 (Tex. 2018)(citing *First Options*, 514 U.S. at 944); *see also* 9 U.S.C.A. § 4 (West 2009)(the court shall order the parties to arbitration "upon being satisfied that the making of the agreement for arbitration … is not in issue"). If the opposing party resists the arbitration, as Double Eagle did, the trial court must then determine whether a valid agreement to arbitrate exists. *J.M. Davidson, Inc.*, 128 S.W.3d at 227 (citing TEX.CIV.PRAC.&REM.CODE ANN. § 171.021). "[W]hen we are called upon to decide whether the parties have agreed to arbitrate, we do not resolve doubts or indulge a presumption in favor of arbitration, because no party may be forced to submit to arbitration in the absence of sufficient showing that the parties entered into a valid and binding arbitration agreement." *Wright v. Hernandez*, 469 S.W.3d 744, 751 (Tex.App.--El Paso 2015, no pet.). The trial court's determination of the arbitration agreement's validity is a legal question subject to de novo review. *J.M. Davidson, Inc.,* 128 S.W.3d at 227.

Here, the record shows that after Ridge moved to compel arbitration, Double Eagle challenged the validity and enforceability of the arbitration agreement itself on several grounds asserting it was internally inconsistent, fundamentally unfair, unconscionable, and integral to a scheme of fraud. Pertinent to the validity of the agreement, Double Eagle raised the argument that the arbitration agreement was "ambiguous" in light of conflicting provisions that required two

4

different organizations—American Arbitration Association (AAA) and JAMS—to administer the arbitration.[2]  Excerpted as follows, the arbitration provision included the following sentences :

> If the mediation . . . does not resolve any such dispute, the parties agree that all disputes between the parties **shall be resolved _solely by_ binding arbitration administered by the American Arbitration Association [AAA] in accordance with its commercial arbitration rules** pursuant to the Texas General Arbitration Act.
>
> * * *
>
> The arbitration _shall be_ **administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures** and in accordance with the Expedited Procedures in those Rules.   [Emphasis added].

In support of its argument, Double Eagle provided excerpts of the rules and procedures of both AAA and JAMS as an exhibit attached to its response.   Although Double Eagle pointed out this ambiguity in both its written response to Ridge's motion to compel arbitration, and during the trial court's hearing on Ridge's motion, Ridge did not directly respond to the argument raised about both AAA and JAMS being named as mandatory administrators of the arbitration, nor otherwise negate the ambiguity, either in its written reply to Double Eagle's response or during the hearing on its motion.[3]   Instead, without addressing how to harmonize the mandatory

---

[2] I recognize that in its written response to Ridge's motion, Double Eagle raised this argument in the context of asserting that Ridge had substantially invoked the judicial process by engaging in extensive discovery, and had thereby waived the right to invoke the arbitration agreement, Double Eagle made an extensive argument regarding the differences between the Texas Rules of Civil Procedure, the JAMS rules and the AAA rules with regard to the amount of discovery allowed under each set of rules, but noting that the arbitration agreement was "ambiguous" with respect to which rules would apply to the arbitration.   During the hearing, Double Eagle expressly pointed out the conflict in the agreement with regard to which organization would administer the arbitration.

[3] In its reply to Double Eagle's response, Ridge addressed the primary arguments raised by Double Eagle, and then simply stated, without further explanation, that the arbitration agreement was "neither ambiguous nor hidden" in the Oil and Gas Royalty Lease.

provisions, Ridge simply argued the agreement was valid and asserted the underlying dispute fell squarely within its scope.

Although the trial court did not make any findings to explain why it denied Ridge's motion to compel arbitration, on appellate review, this Court is required to uphold the trial court's decision based upon any valid legal theory that Double Eagle argued before the trial court. *See Amateur Athletic Union of the United States, Inc. v. Bray*, 499 S.W.3d 96, 102 (Tex.App.--San Antonio 2016, no pet.)(when a trial court makes no specific findings or conclusions in support of its order denying a motion to compel arbitration, the reviewing court must uphold the trial court's ruling if there is a sufficient basis under any legal theory asserted in the trial court)(citing *In re W.E.R.,* 669 S.W.2d 716, 717 (Tex. 1984)(per curiam)(citing *Lassiter v. Bliss,* 559 S.W.2d 353, 346 (Tex. 1977)). Although not applicable here, a court may conclude that an arbitration agreement is ambiguous even in the absence of such a pleading by either party of the suit. *J.M. Davidson, Inc.*, 128 S.W.3d at 231 (citing *Sage St. Associates v. Northdale Const. Co*., 863 S.W.2d 438, 444-45 (Tex. 1993)). At trial, even though Double Eagle primarily challenged the enforceability of the arbitration agreement based on unconscionability, nonetheless, in the alternative, it also argued the agreement was inherently ambiguous and provided excerpts from the rules of both AAA and JAMS to illustrate discovery differences.

In its opening brief, Ridge did not address the inclusion of conflicting arbitration organizations in the purported arbitration agreement even though the ambiguity established a potential basis for the trial court's denial of its motion. *See Sage St. Assoc.,* 863 S.W.2d at 444-45 (holding a court may conclude that a contract is ambiguous even in the absence of such a pleading by either party). After Double Eagle responded with argument and authorities about the

6

ambiguity, Ridge replied that Double Eagle never provided an example of how the AAA rules and the JAMS rules were inconsistent. Putting aside the merits of its reply, it seems that Ridge perceived Double Eagle's argument as pertaining only to unconscionability claims—and therefore, not contract formation—and thereby shifted the burden to Double Eagle to prove the rules were in conflict as an affirmative defense. Notably, Ridge provided no authority for its position.

Following Ridge's lead, the majority presumed the validity of the arbitration agreement despite recognizing that the conflicting terms presented an ambiguity on potentially material terms. Based on criticism of briefing, the majority concluded that Double Eagle failed to adequately develop the ambiguity issue as a challenge to contract formation and cited as authority our recent opinion in *Hogg v. Lynch, Chappell & Alsup, P.C.*, ___ S.W.3d ___, 2018 WL 2077668, at *4–*5 (Tex.App.--El Paso May 4, 2018, no pet.). Contrary to the majority, I view *Hogg* as not applicable to Double Eagle, in this instance, considering that briefing concerns in *Hogg* were addressed to the appellant of the case, and not to the party responding as appellee. *Id.* Pursuant to briefing requirements of an appellee, Double Eagle merely needed to "respond to the appellant's issues or points," as presented in the appellant's brief. TEX.R.APP.P 38.2(a)(2).

To the extent that Double Eagle briefed its response, the majority nonetheless recognized that Double Eagle was contending, first, that the inclusion of both AAA and JAMS created an ambiguity, and second, that it rendered the arbitration agreement unenforceable on the alternative ground that there was no meeting of the minds with respect to the arbitration organization that was named in the agreement to govern the parties' proceeding. As for authorities, Double Eagle cited *Fort Worth Independent School District v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000), for the general proposition that a contract that lacks agreement on material terms is not binding or

7

enforceable. Secondly, it also cited *Flores v. Nature's Best Distrib., LLC*, 7 Cal.App.5th 1, 212 Cal.Rptr.3d 284 (Cal. Ct. App. 2016), as illustrative of the contract principle that an arbitration agreement is rendered unenforceable when it contains an ambiguity with regard to the rules the parties' intended to govern their arbitration proceeding. In my view, regardless of distinctions that may be made about Double Eagle's authorities, the fact remains here that Double Eagle challenged the agreement based on its ambiguity, and the trial court ruled in its favor.

As much as I agree that Double Eagle could have expended more effort on elaborating, nonetheless, as a matter of law, I find the conflict of naming two different organizations with arbitration clauses that are both mandatory yet exclusive, with neither given priority, a resulting ambiguity that is self-evident and patently obvious. Given that Ridge shouldered the burden to establish (1) that a valid agreement existed in the first instance, and (2) that the trial court erred in its ruling, I view Double Eagle's response as far less important than the briefing responsibilities required of Ridge.

Ridge carried the initial burden to establish an arbitration agreement with definite and certain terms. *See J.M. Davidson, Inc.,* 128 S.W.3d at 227; *see also Fischer v. CTMI, L.L.C.,* 479 S.W.3d 231, 237 (Tex. 2016). Because the trial court ruled against Ridge, I would apply *Hogg*'s briefing standard to it. To the extent Ridge made conclusory assertions about the validity of the arbitration clause—without negating the ambiguity of requiring both exclusivity and use of both AAA and JAMS—I would conclude that it was Ridge, and not Double Eagle, that failed to adequately brief the issue, either in its opening brief or in its reply. Accordingly, I would not overlook the ambiguity based on Double Eagle having failed to adequately brief the issue; instead, as a question of law for the court, I would consider the merits of whether the terms were ambiguous

pursuant to established contract principles, as the ambiguity presents a potential basis of support for the trial court's determination that the arbitration agreement was unenforceable.

## There Must be a Meeting of the Minds on all Material Terms of an Arbitration Agreement Before it will be Enforced

Although declining to address the merits of the ambiguity, the majority nonetheless recognizes that it exists and describes it as a "troubling" issue. As the majority acknowledges, a failure to agree to "vitally important" terms in an arbitration agreement—as in any other contract—may constitute a failure of contract formation at large.

"A meeting of the minds is necessary to form a binding contract." *Lucchese Boot Co. v. Rodriguez*, 473 S.W.3d 373, 386 (Tex.App.--El Paso 2015, no pet.)(quoting *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008)); *see also Fischer,* 479 S.W.3d at 237 (a contract must address essential and material terms with "a reasonable degree of certainty and definiteness.")(citing *Pace Corp. v. Jackson,* 155 Tex. 179, 284 S.W.2d 340, 345 (1955)); *Wells v. Hoisager,* ___ S.W.3d ___, 2018 WL 1181311, at *5 (Tex.App.--El Paso Mar. 7, 2018, no pet.)(recognizing the general principle that the terms of a contract must be sufficiently definite and agreed to by the parties before it can be enforced). "[I]f the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue on the parties' intent." *J.M. Davidson,* 128 S.W.3d at 229. "Only where a contract is ambiguous may a court consider the parties' interpretation and admit extraneous evidence to determine the true meaning of the instrument." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333–34 (Tex. 2011).

The majority recognizes, as do I, that the arbitration agreement itself lacks any basis for reconciling the two conflicting provisions. Thus, there is no valid means for a court to determine

9

which of the two provisions the parties' intended to apply to their arbitration proceeding. *See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex.1996)(a contract is ambiguous if it is subject to "two or more reasonable interpretations after applying the pertinent rules of construction . . . ."). Stated another way, if we were to select one of these two conflicting provisions over the other (i.e. AAA over JAMS; or JAMS over AAA), we would in effect be re-writing the parties' agreement; yet, we are prohibited. *See generally Lucchese Boot Co.,* 473 S.W.3d at 383–84 (refusing to read an unwritten clause into an arbitration agreement); *see also Grimes v. Walsh & Watts, Inc.,* 649 S.W.2d 724, 727 (Tex.App.--El Paso 1983, writ ref'd n.r.e.)(courts cannot read implied provisions into contracts absent evidence the covenant "so clearly within the contemplation of the parties that they deemed it unnecessary to express it"); *Matter of Cmty. Med. Ctr.,* 623 F.2d 864, 866 (3rd Cir. 1980)("[T]he court will not make a different or better contract than the parties themselves have seen fit to enter into . . . ."). By selecting two separate arbitration organizations to administer the parties' arbitration, and by selecting two separate sets of governing rules to apply to the arbitration, I conclude the arbitration agreement is ambiguous. *See Sage St. Associates,* 863 S.W.2d at 445 (a court can decide whether a contract is ambiguous as a question of law).

The question remains whether these conflicting provisions related to terms that were material and essential to the parties' agreement such that a failure to agree would render the agreement unenforceable. A contract need only be definite and certain as to those terms that are "material and essential" to the parties' agreement. *Fischer*, 479 S.W.3d at 237 (citing *Radford v. McNeny,* 129 Tex. 568, 104 S.W.2d 472, 475 (1937); *T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 221 (Tex.1992)). Under Texas law, material and essential terms are those that

parties would reasonably regard as "'vitally important ingredient[s]' of their bargain." *Fischer*, 479 S.W.3d at 237. The question of which terms can be considered "material" to a contract must be determined on a "case-by-case basis," and therefore, "[e]ach contract should be considered separately to determine its material terms." *Id.*

For two related reasons, the majority concludes it is not able to determine whether the conflicting provisions are material. First, it blames Double Eagle's briefing for failing to explain the materiality of having two arbitration organizations named in the arbitration agreement. Second, while recognizing that there could in fact be relevant differences between the governing rules of the two organizations, the majority concludes that Double Eagle failed to include analysis sufficient to "place the formation issue before the Court." For the following reasons, I disagree.

**The Materiality of the Arbitration Organizations' Governing Rules**

As stated before, the purported arbitration agreement provides the following two statements: first, that "the parties agree that all disputes between the parties shall be resolved solely by binding arbitration administered by the American Arbitration Association [AAA] in accordance with its commercial arbitration rules;" and, second, that "[t]he arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those Rules."

When an arbitration agreement states that the arbitration is to be governed by the rules of an arbitration organization, those rules are implied into the terms of the parties' arbitration agreement to the extent that they do not conflict with the express terms of the agreement. *Americo Life, Inc. v. Myer,* 440 S.W.3d 18, 24 (Tex. 2014)(when an arbitration agreement incorporates by reference outside rules, "the specific provisions in the arbitration agreement take precedence and

11

the arbitration rules are incorporated only to the extent that they do not conflict with the express provisions of the arbitration agreement.")(citing *Szuts v. Dean Witter Reynolds, Inc.,* 931 F.2d 830, 832 (11th Cir.1991)); *see also Schlumberger Tech. Corp. v. Baker Hughes Inc.*, 355 S.W.3d 791, 803 (Tex.App.--Houston [1st Dist.] 2011, no pet.)(holding that language in an arbitration agreement stating that the arbitration is to be administered by an arbitration organization pursuant to the organization's rules incorporates the organization's rules into the agreement).

In the trial court, Double Eagle provided an example of how those two sets of rules differed, expressly pointing out that AAA and JAMS have different governing rules relating to the parties' ability to obtain discovery during the arbitration process. The record shows that the rules governing the Expedited Procedures under JAMS indicate that the parties have the right to make "reasonable" document requests, and the right to limited e-discovery, subject to limits imposed by the arbitrator. JAMS rules provide for a discovery period for "percipient discovery" of up to 75 days after the parties have had a preliminary conference, and up to 105 days after the conference for "expert discovery." These rules allow for one deposition per side, unless the arbitrator decides otherwise, but prohibit expert depositions when a written expert report has been produced, unless good cause is shown.

In contrast, as Double Eagle pointed out in the trial court, the AAA Commercial Rules provide the arbitrator with almost total discretion to control the discovery process. In particular, the AAA Commercial Rules provide that the arbitrator "manage[s] any necessary exchange of information," and "may," on a party's application, require the parties to exchange documents, and "may" order depositions, in its discretion, but only in "exceptional cases'" and "upon good cause shown." Therefore, although discovery under JAMS is limited in nature, the JAMS rules provide

express terms and some assurance that the parties will be able to conduct a minimal amount of discovery prior to arbitration, while the AAA rules provide discovery less explicitly defined subject to the arbitrator's discretion.

In the court system, discovery rights are recognized as being fundamentally important to allowing parties to understand the true nature of the facts underlying their dispute, to prepare for trial, and to avoid the prospect of a trial (or hearing) by "ambush." *See, e.g., Reid Rd. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd*., 337 S.W.3d 846, 851 (Tex. 2011). Moreover, parties in a civil case may be sanctioned for their failure to cooperate, which illustrates the important nature of discovery proceedings. *See, e.g*., TEX.R.CIV.P. 215.2 (discussing sanctions that can be imposed in the discovery process); *see also Horizon Health Corp. v. Acadia Healthcare Co., Inc.,* 520 S.W.3d 848, 884 (Tex. 2017)(citing *Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex. 1986)(per curiam)(discussing discovery sanctions). I view the discovery differences identified by Double Eagle between AAA and JAMS as being illustrative of the materiality of the arbitration rules.

In addition to discovery differences, other differences are easily noted from the excerpts of rules included in the record. For example, there are differences in the rules regarding where and when an arbitration will take place and the general time lines for conducting the arbitration itself.[4] Further, as discussed in more detail below, each organization has its own set of rules governing the procedures for selecting an arbitrator, for disqualifying an arbitrator, and for appointing a substitute arbitrator when necessary. Thus, I conclude there are fundamental differences between

---

[4] Rule 24 of the AAA rules allow the arbitrator to "set the date, time, and place for each hearing." On the other hand, Rule 16 of the JAMS Rules specifies that a hearing will commence within 60 calendar days after the cutoff for percipient discovery.

the rules of AAA and those of JAMS, and these differences show that the selection of the governing provision is a highly material and essential term of the parties' agreement.

In support of its alternative argument, Double Eagle provided a case nearly on point from a California intermediate state court. In *Flores*, the agreement failed to define whether disputes would be subject to arbitration before AAA or through the procedures contained in a collective bargaining agreement.[5] In giving effect to the parties' mutual intent at the time of contracting, *Flores* held the agreement was ambiguous regarding "the governing rules and procedures for any such arbitration." *Flores*, 7 Cal.App.5th at 11, 212 Ca.Rptr. at 292.

Commenting that it was unclear what bearing the *Flores* case had on the case at bar, the majority rejected *Flores* as not being persuasive. I view *Flores* differently. In *Flores*, the California court merely applied a basic tenet of contract law not materially different from the principles of contract interpretation applied in this state. *See, e.g.*, *T.O. Stanley Boot Co.*, 847 S.W.2d at 221 ("In order to be legally binding, a contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook."). Having concluded that there are in fact material differences in the governing rules of the two arbitration organizations, and that we must apply both rules to the parties' arbitration without exception, I conclude that the parties' arbitration agreement is ambiguous and therefore unenforceable. Given that the arbitration clause itself excludes the application of the Federal Arbitration Act, I find no assurance that this irreconcilable issue can be reconciled easily with the aid of the Federal Arbitration Act as the

---

[5] In *Flores*, the arbitration agreement additionally stated that the AAA rules would apply to the parties' arbitration, but as the plaintiff—who opposed the arbitration—pointed out, AAA had, at the time, "'multiple sets of rules—currently 69 separate sets, including 'labor arbitration,' 'employment arbitration rules and mediation procedures,' 'non-binding arbitration rules,' and 'employee benefit plan' rules, among many others.'" *Flores*, 7 Cal.App.5th at 5, n.2, 212 Cal.Rptr.3d at 287, n.2.

14

majority seems to suggest.

## The Significance of Selecting an Arbitration Organization

Perhaps more importantly, there is an additional concern about the parties' purported arbitration agreement that I will address. Not only do the two conflicting sentences provide for rules from two separate arbitration organizations, these sentences broadly describe administration by two different arbitration organizations. The express terms provide that the arbitration must be "administered by the American Arbitration Association," and "shall be administered by JAMS." In my view, these opposing requirements about arbitration administration raise further concerns that are both practical and jurisdictional.

The selection of an arbitration organization to administer an arbitration is akin to the selection of a forum. It is an integral and material element of an arbitration agreement. As recognized by several federal courts, when the parties have designated an organization to administer their arbitration, and have indicated that this is the exclusive or only "forum" in which they wish their arbitration to take place, if that organization is unable to administer the arbitration, the arbitration agreement is considered void and unenforceable. *See, e.g., MacDonald v. CashCall, Inc*, 883 F.3d 220, 232-233 (3d Cir. 2018)(finding that forum selection clause in an arbitration agreement was an integral part of the arbitration agreement, thereby rendering the agreement invalid where the selected forum was unavailable); *Parm v. Nat'l Bank of California, N.A.*, 835 F.3d 1331, 1338 (11th Cir. 2016)(refusing to enforce arbitration agreement where selected forum was not available, and where the selection was integral to the parties' agreement to arbitrate); *Inetianbor v. CashCall, Inc.*, 768 F.3d 1346, 1353 (11th Cir. 2014)(refusing to compel

arbitration where selected arbitration forum was unavailable, despite the presence of a severability clause, where the forum selection clause was integral to the parties' agreement).

Here, with the parties selecting two different forums to administer their arbitration, and each having their own set of governing rules, the court has no means to give effect to the parties' agreement. As a practical matter, if this controversy is sent back to the trial court with instructions to compel arbitration, as the majority demands, there is an impossibility of the parties' presenting themselves in two independent forums at the same time. Will they present their arbitration agreement to JAMS or AAA? And will either organization accept the agreement for arbitration given the mandatory nature of opposing terms?

To initiate an arbitration proceeding, each arbitration organization requires the parties to present a valid arbitration agreement, indicating that the parties have selected the organization to administer the arbitration and that they are willing to abide by the organization's rules, together with a fee payment. *See, e.g., Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 762 (3d Cir. 2016), *cert. denied*, 137 S.Ct. 40, 196 L.Ed.2d 27 (2016)(noting that Commercial Rule 4 of the AAA states that "[a]rbitration under an arbitration provision in a contract shall be initiated by the initiating party ('claimant') filing with the AAA a Demand for Arbitration, the administrative filing fee, and a copy of the applicable arbitration agreement from the parties' contract which provides for arbitration."); *Cent. States, Se. & Sw. Areas Pension Fund v. Allega Concrete Corp.,* 772 F.3d 499, 501 (7th Cir. 2014)(discussing AAA's fee structure, and noting that a party must pay fees to AAA when demanding arbitration); *Seven Hills Commercial, LLC v. Mirabal Custom Homes, Inc.,* 442 S.W.3d 706, 723 (Tex.App.--Dallas 2014, pet. denied)(noting that JAMS rule 26(a) states: "Each Party shall pay its *pro-rata* share of JAMS fees and expenses

16

as set forth in the JAMS fee schedule in effect at the time of the commencement of the Arbitration, unless the Parties agree on a different allocation of fees and expenses."). An arbitration organization may decline to accept a case for arbitration if the parties do not agree to the organization's authority to administer the arbitration and/or do not agree to abide by the organization's rules. *See generally Cobarruviaz v. Maplebear, Inc.,* 143 F.Supp.3d 930, 937–38 (N.D. Cal. 2015)(noting that JAMS declined to arbitrate the parties' claims where the parties' arbitration agreement failed to comply with the organization's minimum standards).

### The Significance of Selecting an Arbitrator

And finally, I find it significant that the selection of an arbitration organization to administer the arbitration will, in this instance, determine how an arbitrator will be selected, and who that arbitrator will be. In their agreement, the parties did not choose an arbitrator, nor did they set forth any criteria for the selection of an arbitrator; therefore, the arbitrator will be selected by the method set forth by the arbitration organization that is administering the arbitration, and from a list of one of the organization's approved arbitrators. *See, e.g., Hamlin v. Dollar Tree Stores, Inc.,* C.A. No. 2:17-CV-2648-PMD, 2017 WL 6034325, at *3 (D.S.C. Dec. 6, 2017)(if the parties do not agree on an arbitrator, JAMS facilitates the selection of an arbitrator from its list of approved arbitrators); *Fleming Companies, Inc. v. FS Kids, L.L.C.,* No. 02-CV-0059E(F), 2003 WL 21382895, at *2, n.6 (W.D.N.Y. May 14, 2003)(recognizing that the AAA Commercial Rules provide that if the parties have not appointed an arbitrator and have not provided any other method of appointment, AAA sends an identical list of names of persons chosen from the AAA's panel of arbitrators, and if the parties still cannot agree, AAA ultimately has the power to appoint an arbitrator of its choosing); *Kendall Builders, Inc. v. Chesson,* 149 S.W.3d 796, 801 (Tex.App.--

17

Austin 2004, pet. denied)(noting that in accordance with the AAA's governing rules, the parties selected a neutral arbitrator from an AAA-approved list of arbitrators); s*ee also Roehrs v. FSI Holdings, Inc.,* 246 S.W.3d 796, 807 (Tex.App.--Dallas 2008, pet. denied)(recognizing that R-12 of the AAA commercial arbitration rules require an arbitrator selected by the parties to meet the standards of AAA's rules with respect to impartiality and independence unless the parties have specifically agreed otherwise).

The question of who will serve as an arbitrator, to decide the question of arbitrability in the first instance, and thereafter preside over the arbitration proceeding itself, is a fundamental step in the arbitration process raising jurisdictional concerns. As the Texas Supreme Court has recognized, arbitrators derive their very "power from the parties' agreement to submit to arbitration," and they have no independent source of jurisdiction apart from the parties' consent. *See Americo Life, Inc. v. Myer*, 440 S.W.3d 18, 21–22 (Tex. 2014)(citing *City of Pasadena v. Smith,* 292 S.W.3d 14, 20 (Tex. 2009); *I.S. Joseph Co. v. Mich. Sugar Co.,* 803 F.2d 396, 399 (8th Cir. 1986)); *see also Dawson v. Wells Fargo Bank Nat'l Ass'n*, No. 09-15-00035-CV, 2015 WL 9311676, at *4 (Tex.App.--Beaumont Dec. 23, 2015, no pet.)(mem. op.). Therefore, arbitrators must be selected pursuant to the method specified in the parties' agreement, and an "arbitration panel selected contrary to the contract-specified method lacks jurisdiction over the dispute." *Americo Life, Inc.*, 440 S.W.3d at 21 (citing *Brook v. Peak Int'l, Ltd.,* 294 F.3d 668, 672–73 (5th Cir. 2002)). Accordingly, courts "do not hesitate to vacate an award when an arbitrator is not selected according to the contract-specified method." *Id*. (citing *Bulko v. Morgan Stanley DW, Inc.,* 450 F.3d 622, 625 (5th Cir. 2006)).

18

In *Americo Life,* the parties' arbitration agreement contained an express reference to the criteria to be applied in selecting an arbitration panel, but also stated that the AAA rules were to govern the arbitration. *Id*. at 20-21. The AAA rules, however, provided for different selection criteria than the arbitration itself did. *Id*. at 21. The Court held that it was able to reconcile this conflict, finding that, although a reference to an arbitration organization's rules in an arbitration agreement generally incorporates that organization's rules into the agreement, the rules are only incorporated to the extent that they do not conflict with an express term in the agreement; in the event of a conflict, the express term in the agreement on a particular matter will take precedence over the general reference to an organization's rules. *Id*. at 24-25; *see also Dastime Group Ltd. v. Moonvale Investments Ltd.,* No. 17-CV-01859-JSW, 2017 WL 4712179, at *5 (N.D. Cal. Oct. 11, 2017)(recognizing that where an arbitration agreement refers to an organization's governing provisions, but contains an express provision in conflict with those rules, the expression provision controls). The Court noted, however, that the arbitration panel in that case was formed in accordance with the AAA rules, rather than the express terms in the parties' agreement. *Americo Life, Inc.*, 440 S.W.3d at 21. The Court therefore found that the arbitration panel was improperly formed, and therefore had no authority to preside over the parties' arbitration and/or to resolve its dispute. *Id.* at 25 (citing *City of Pasadena,* 292 S.W.3d at 20; *I.S. Joseph Co.,* 803 F.2d at 399). Accordingly, as the arbitrator did not have jurisdiction to enter its arbitration award, the Court vacated that award. *Id.* at 25; *see also Cargill Rice, Inc. v. Empresa Nicaraguense Dealimentos Basicos*, 25 F.3d 223, 226 (4th Cir. 1994)("Arbitration awards made by arbitrators not appointed under the method provided in the parties' contract must be vacated.").

19

Here, because the parties did not provide any express terms relating to the selection of an arbitrator, and instead, they set forth mandatory terms requiring two sets of governing rules that provide different methods for selecting an arbitrator, I would conclude that the parties failed to agree on the material term of how an arbitrator will initially be selected. Because the arbitration agreement ranked both organizations equally and did not specify which of the two would make the appointment, I have concerns that an arbitrator appointed under these circumstances would be subject to a jurisdictional attack, as occurred in *Americo Life, Inc.,* 440 S.W.3d at 21–22.[6]

### CONCLUSION

In sum, first, I would affirm the trial court's denial of the motion to compel arbitration on the basis that the purported arbitration agreement is not a valid arbitration agreement and does not support compelled arbitration. Second, absent a binding arbitration agreement, I would conclude that there is no need yet to address the affirmative defense of whether the agreement was procedurally and/or substantively unconscionable. *See* TEX.R.APP.P. 47.1.

August 24, 2018

GINA M. PALAFOX, Justice

Before Rodriguez, J., Palafox, J., Larsen, Senior Judge
Larsen, Senior Judge (Sitting by Assignment)
Palafox, J. (Dissenting)

---

[6] Although this jurisdictional issue was not directly raised by the parties, I note that courts should generally consider jurisdictional issues as they arise at any stage of the proceedings, whether raised by the parties or not. *See, e.g., Good Shepherd Med. Ctr., Inc. v. State*, 306 S.W.3d 825, 837 (Tex.App.--Austin 2010, no pet.)(recognizing that a court should consider the matter of subject matter jurisdiction sua sponte, as the court's power to hear a case depends on it); *see also J.P. Morgan Chase Bank, N.A. v. Del Mar Properties, L.P.,* 443 S.W.3d 455, 458–59 (Tex.App.--El Paso 2014, no pet.)(because the question of jurisdiction is fundamental, an appellate court may address it at any time, even *sua sponte*).